MCI Telecommunications Corporation, Appellant, *v.* Public Utilities Commission of Ohio et al., Appellees.

[Cite as MCI Telecommunications Corp. *v.* Pub. Util. Comm. (1987), 32 Ohio St. 3d 306.]

(No. 86-861—Decided September 9, 1987.)

*Chester, Hoffman & Willcox, Clifford O. Arnebeck, Jr., Donald C. Brey, Mark J. Palmer* and *Stephanie M. Pestello,* for appellant.

*Anthony J. Celebrezze, Jr.,* attorney general, *Robert S. Tongren,*

*Frank P. Darr* and *Anne E. Henkener,* for appellee.

*Donald McG. Rose* and *Mark H. Longenecker, Jr.,* for intervening appellee Cincinnati Bell Telephone Co.

*Donald W. Morrison* and *Charles S. Rawlings,* for intervening appellee Ohio Bell Telephone Co.

*Ellen A. D'Amato* for intervening appellee United Telephone Co. of Ohio.

*Bruce Kazee,* urging affirmance for *amicus curiae,* General Telephone Co. of Ohio.

*Schneider, Prohaska & Sams* and *J. Raymond Prohaska,* urging affirmance for *amicus curiae,* Ohio Telephone Association.

*Per Curiam.* The scope of our review of PUCO orders is set forth in R.C. 4903.13, which states in pertinent part:

"A final order made by the public utilities commission shall be reversed, vacated, or modified by the supreme court on appeal, if, upon consideration of the record, such court is of the opinion that such order was unlawful or unreasonable. * * *"

Under the "unlawful or unreasonable" standard specified in R.C. 4903.13, we will not reverse or modify a PUCO decision as to questions of fact where the record contains sufficient probative evidence to show that the PUCO's determination is not against the manifest weight of the evidence and is not so clearly unsupported by the record as to show misapprehension, mistake or willful disregard of duty. *Dayton Power & Light Co.* v. *Pub. Util. Comm.* (1983), 4 Ohio St. 3d 91, 4 OBR 241, 447 N.E. 2d 733; *Columbus* v. *Pub. Util. Comm.* (1979), 58 Ohio St. 2d 103, 12 O.O. 3d 112, 388 N.E. 2d 1237. As to questions of law, however, this court has complete, independent power of review. Legal issues are accordingly subjected to more intensive examination than are factual questions. *Consumers' Counsel* v. *Pub. Util. Comm.* (1979), 58 Ohio St. 2d 108, 12 O.O. 3d 115, 388 N.E. 2d 1370; *Consumers' Counsel* v. *Pub. Util. Comm.* (1983), 4 Ohio St. 3d 111, 4 OBR 358, 447 N.E. 2d 749.

### A

MCI first contends that the PUCO's February 11, 1986 order was unreasonable and unlawful because the PUCO failed to give notice of its intended distribution of the surplus funds and failed to conduct a hearing prior to issuing the order, in violation of the due process requirements of the Ohio and United States Constitutions. MCI argues that it was entitled to such prior notice and a hearing because, as a customer purchasing access service from local exchange companies, it had a substantive right in and to the pool surplus.

We have repeatedly held that a utility ratepayer has no constitutional right to notice and hearing in rate-related matters if no statutory right to a hearing exists. *Armco, Inc.* v. *Pub. Util. Comm.* (1982), 69 Ohio St. 2d 401, 23 O.O. 3d 361, 433 N.E. 2d 923; *Cleveland* v. *Pub. Util. Comm.* (1981), 67 Ohio St. 2d 446, 453, 21 O.O. 3d 279, 283, 424 N.E. 2d 561, 566; *Committee Against MRT* v. *Pub. Util. Comm.* (1977), 52 Ohio St. 2d 231, 239, 6 O.O. 3d 475, 480, 371 N.E. 2d 547, 552 (P. Brown, J., dissenting). MCI has not cited any statute in support of its contention that it was entitled to a hearing. Accordingly, MCI's first contention is not well-taken. In any event, the record in this case shows that MCI was not prejudiced by the PUCO's failure to hold a hearing. The PUCO indicated its intent to use any pool surplus to reduce local exchange company message toll service rates as early as the May 21, 1984 order. MCI was a party to the original proceedings in PUCO No. 83-464-TP-COI, but it did

not file an application for rehearing of the May 21, 1984 order with regard to the proposed disposition of the pool surplus. MCI had ample opportunities to advocate its position regarding its entitlement to surplus funds by submitting comments and replies to the submissions of the parties.

B

MCI's second contention is that the PUCO's order failed to comply with the requirements of R.C. 4903.09.

R.C. 4903.09 states that:

"In all contested cases heard by the public utilities commission, a complete record of all of the proceedings shall be made, including a transcript of all testimony and of all exhibits, and *the commission shall file,* with the records of such cases, *findings of fact and written opinions setting forth the reasons prompting the decisions arrived at, based upon said findings of fact."* (Emphasis added.) ·

MCI argues that the February 11, 1986 order fails to comply with the statute in two regards. First, MCI contends that the PUCO's February 11, 1986 order failed to contain the required findings of fact and reasons prompting the PUCO's decisions. Second, MCI contends that the record in PUCO No. 83-464-TP-COI does not support the PUCO's decision. In effect, MCI argues that the PUCO's decision is against the manifest weight of the evidence and clearly unsupported by the record.

The purpose of R.C. 4903.09 (formerly G.C. 614-46a), as stated by this court in *Commercial Motor Freight, Inc.* v. *Pub. Util. Comm.* (1951), 156 Ohio St. 360, 363-364, 46 O.O. 210, 211-212, 102 N.E. 2d 842, 844-845, is:

"* * * to enable this court to review the action of the commission without reading the voluminous records in Public Utilities Commission cases. Where the commission states the facts found upon which it bases its decision, this court can usually readily determine, as it is required to do by Section 544, General Code, whether the order of the commission is 'unlawful or unreasonable.' A review of the essential facts so found can also be made with the help of record references supplied by opposing counsel in their briefs. *The General Assembly never intended this court to perform the same functions and duties as the Public Utilities Commission but it did intend that this court should determine whether the facts found by the commission lawfully and reasonably justified the conclusions reached by the commission in its order and whether the evidence presented to the commission as found in the record supported the essential findings of fact so made by the commission."* (Emphasis added.)

Taken literally, R.C. 4903.09 requires PUCO orders to contain specific findings of fact and conclusions of law. However, the requirements of R.C. 4903.09 have been satisfied by orders which incorporate or adopt attorney-examiner reports or commission secretary reports which contain such findings or conclusions. *Railway Express Agency, Inc.* v. *Pub. Util. Comm.* (1962), 173 Ohio St. 69, 18 O.O. 2d 287, 180 N.E. 2d 10; *New York Central Rd. Co.* v. *Pub. Util. Comm.* (1955), 164 Ohio St. 289, 58 O.O. 68, 130 N.E. 2d 365; *Buckeye Lake Chamber of Commerce* v. *Pub. Util. Comm.* (1954), 161 Ohio St. 306, 53 O.O. 180, 119 N.E. 2d 51. Furthermore, PUCO orders which incorporate testimony from the proceeding or incorporate the entire record from a related investigative PUCO case have been upheld as reasonable and lawful. *County Commissioners' Assn.* v. *Public Util. Comm.* (1980), 63 Ohio St. 2d 243, 17 O.O. 3d 150, 407 N.E. 2d 534; *General Motors Corp.* v. *Pub. Util. Comm.*

(1976), 47 Ohio St. 2d 58, 1 O.O. 3d 35, 351 N.E. 2d 183. In fact, where there was enough evidence and discussion in an order to enable the PUCO's reasoning to be readily discerned, this court has found substantial compliance with R.C. 4903.09, and held that the lack of specific findings may be simply a technical defect which would not result in the invalidation of the order. *Consumers' Counsel* v. *Pub. Util. Comm.,* *supra* (58 Ohio St. 2d 108); *Braddock Motor Freight, Inc.* v. *Pub. Util. .Comm.* (1963), 174 Ohio St. 203, 22 O.O. 2d 173, 188 N.E. 2d 162.

On the other hand, PUCO orders which merely made summary rulings and conclusions without developing the supporting rationale or record have been reversed and remanded. *Ideal Transp. Co.* v. *Pub. Util. Comm.* (1975), 42 Ohio St. 2d 195, 71 O.O. 2d 183, 326 N.E. 2d 861; *Motor Service Co.* v. *Pub. Util. Comm.* (1974), 39 Ohio St. 2d 5, 68 O.O. 2d 3, 313 N.E. 2d 803.

The more recent decisions of this court have analyzed PUCO orders to determine whether findings were made in sufficient detail to enable the court to make its review as to lawfulness and reasonableness. *Cleveland Elec. Illum. Co.* v. *Pub. Util. Comm.* (1984), 12 Ohio St. 3d 320, 322, 12 OBR 390, 392, 466 N.E. 2d 917, 920; *Cleveland Elec. Illum. Co.* v. *Pub. Util. Comm.* (1983), 4 Ohio St. 3d 107, 4 OBR 355, 447 N.E. 2d 746; *Harold D. Miller, Inc.* v. *Pub. Util. Comm.* (1982), 1 Ohio St. 3d 162, 1 OBR 194, 438 N.E. 2d 448.

In order to meet the requirements of R.C. 4903.09, therefore, the PUCO's order must show, in sufficient detail, the facts in the record upon which the order is based, and the reasoning followed by the PUCO in reaching its conclusion.

The PUCO's February 11, 1986 order regarding the distribution of the pool surplus concluded that there was a lack of available information regarding the costs incurred by local exchange companies in providing access services. Faced with this factual deficiency, the PUCO exercised its discretion and selected the fairest alternative by providing for a pro-rata distribution based on the only statistics which were available to document the revenue contribution to the pool—the levels of revenue contribution to the pool by local exchange companies and by interexchange carriers. The February 11, 1986 order further stated that the PUCO's decision was "tempered by policy considerations, equity, and certain other non-economic factors."

We find that the PUCO's February 11, 1986 order clearly sets forth the PUCO's reasoning in support of its actions, and that the totality of the record in PUCO No. 83-464-TP-COI contains ample support for that order. The PUCO had before it all the various comments submitted by participating parties, the record from the 1983 hearings and the PUCO's cumulative experience in implementing the deregulation of the telecommunications industry during the past few years. The PUCO's order satisfies the requirements of R.C. 4903.09 for a reasoned decision based on a factual record. MCI's second argument is rejected.

## C

MCI next advances several arguments to the effect that the February 11, 1986 order was unlawful and unreasonable because the PUCO made unreasonable and discriminatory decisions in violation of R.C 4905.22, 4905.33 and 4905.35.[1]

---

[1] R.C. 4905.22 provides:

"Every public utility shall furnish necessary and adequate service and facilities, and every public utility shall furnish

R.C. 4905.22 essentially requires that utilities provide necessary and adequate service and facilities at just and reasonable rates. R.C. 4905.33 and 4905.35 are anti-discrimination statutes which prohibit "unreasonable" or "undue" discrimination or preferences in utility service and rates.

MCI argues that the reduction in local exchange company toll rates ordered by the February 11, 1986 order is unreasonable because the PUCO incorrectly assumed that access revenues and toll charges equally contributed to the pool surplus. In the alternative, MCI argues that if the PUCO's assumption is correct, the PUCO should also have ordered a reduction in interexchange carrier access charges. Finally, MCI argues that the combined impact of the reduction in toll rates and the continuation of the excessive access rates will be unfair subsidization of local exchange company revenues, because interexchange carrier access charges will be required to replace the reduced toll revenues. According to MCI, this unwarranted subsidy of local exchange company toll rates is an unreasonable and undue preference in violation of R.C. 4905.35

and an unreasonable cross-subsidization in violation of R.C. 4905.33 and 4905.22.

The PUCO and the intervening appellees dispute the factual basis of MCI's arguments, and argue that MCI has failed to properly allege any violations of R.C. 4905.22, 4905.33 or 4905.35.

MCI's allegations regarding the alleged discriminatory actions raise difficult factual issues. MCI's arguments are essentially based on the assumption that interexchange carrier access service charges were the only source of the pool surplus funds. The PUCO, on the other hand, has concluded that local exchange company toll revenues also contributed substantially to the surplus. As discussed above, we do not find that conclusion to be unreasonable or unlawful.

We find that the PUCO's actions in requiring local exchange company rate reductions were not unjust or unreasonable. The PUCO has broad discretion in regulating and supervising the restructuring of the Ohio telecommunications industry. We find that the PUCO's actions in this regard are not against the manifest weight of the

---

and provide with respect to its business such instrumentalities and facilities, as are adequate and in all respects just and reasonable. All charges made or demanded for any service rendered, or to be rendered, shall be just, reasonable, and not more than the charges allowed by law or by order of the public utilities commission, and no unjust or unreasonable charge shall be made or demanded for, or in connection with, any service, or in excess of that allowed by law or by order of the commission."

R.C. 4905.33 provides:

"No public utility shall directly or indirectly, or by any special rate, rebate, drawback, or other device or method, charge, demand, collect, or receive from any person, firm, or corporation a greater or lesser compensation for any services

rendered, or to be rendered, except as provided in Chapters 4901., 4903., 4905., 4907., 4909., 4921., 4923., and 4925. of the Revised Code, than it charges, demands, collects, or receives from any other person, firm, or corporation for doing a like and contemporaneous service under substantially the same circumstances and conditions. No public utility shall furnish free service or service for less than the actual cost for the purpose of destroying competition."

R.C. 4905.35 provides:

"No public utility shall make or give any undue or unreasonable preference or advantage to any person, firm, corporation, or locality, or subject any person, firm, corporation, or locality to any undue or unreasonable prejudice or disadvantage."

evidence or so clearly unsupported by the record as to constitute mistake, misapprehension or willful disregard of duty.

### D

MCI's last argument is that the PUCO illegally created the OTAB, and has unlawfully delegated to the OTAB responsibilities which the PUCO is statutorily required to perform.

The record in this case demonstrates that the OTAB was created to provide a resource to assist the PUCO in dealing with complex exigencies of the AT & T divestiture and the transition to cost-based access charges. However, the record in this proceeding also indicates that the OTAB has no responsibilities or powers in its own right, and has performed only ministerial acts and data-gathering functions subject to the specific direction and continuing review of the PUCO and its staff. We find the PUCO's creation and use of such an industry advisory board to be both reasonable and appropriate.

It is clear that the PUCO has not exceeded its jurisdiction by the creation of the OTAB. MCI's contention is without merit.

For the reasons stated above, we find that the PUCO's February 11, 1986 order was lawful and reasonable, and it is hereby affirmed.

*Order affirmed.*

MOYER, C.J., DOUGLAS, WRIGHT and H. BROWN, JJ., concur.

SWEENEY and HOLMES, JJ., dissent.

LOCHER, J., dissents with opinion.

LOCHER, J., dissenting. I am once again compelled to dissent to the cavalier approach taken by this court in affirming an order of the Public Utilities Commission of Ohio ("PUCO"). The PUCO order of February 11, 1986 is clearly unlawful and unreasonable under R.C. 4903.13.

Initially, MCI Telecommunications Corporation ("MCI") was statutorily entitled to notice and a hearing prior to the issuance of the order. The PUCO relies upon R.C. 4905.26 as authority to set the access rates in the order. With respect to a complaint concerning the lawfulness or reasonableness of a utility rate, R.C. 4905.26 provides that when "it appears that reasonable grounds for complaint are stated, the commission shall fix a time for hearing and shall notify complainants and the public utility thereof * * *." Although hearings were held before the PUCO issued its May 21, 1984 order which created the system for determining access charges and the residual revenues pool, the February 11, 1986 order which implements the system provided for in the May 21, 1984 order is controlled by R.C. 4905.26 as well.

Therefore, the February 11, 1986 order should have been preceded by a hearing also, rather than the "notice and comment" procedure used by the PUCO. The portion of the statute requiring that there be reasonable grounds for complaint was satisfied, in that there was great debate among the parties as to how much each had contributed to the residual revenues pool and as to how the pool surplus should be divided. As a result, MCI was denied due process of law when the PUCO issued its February 11, 1986 order without holding a hearing and giving notice to the parties under R.C. 4905.26.[2]

---

[2] The majority states that the appellant was not prejudiced by the failure of the

PUCO to hold a hearing. I disagree. MCI was prejudiced because the PUCO never

Although I am of the view that the failure of the PUCO to give notice and hold a hearing prior to issuing the order is sufficient to require a reversal of that order, there is an additional reason why the order is unlawful and unreasonable. R.C. 4903.09 requires that in "all contested cases heard by the public utilities commission, * * * the commission shall file * * * findings of fact and written opinions setting forth the reasons prompting the decisions arrived at, based upon said findings of fact."

The majority cites, and then conveniently ignores, cases in which we have held that PUCO orders should be reversed and remanded if they are not based upon the record or any specific finding of fact. See *Ideal Transportation Co.* v. *Pub. Util. Comm.* (1975), 42 Ohio St. 2d 195, 71 O.O. 2d 183, 326 N.E. 2d 861; *Motor Service Co.* v. *Pub. Util. Comm.* (1974), 39 Ohio St. 2d 5, 68 O.O. 2d 3, 313 N.E. 2d 803. In the case *sub judice*, the PUCO did not base its order on the facts in the record. The PUCO merely concluded that there

was a lack of available information on which to base a distribution of the local surplus. Essentially, the PUCO *assumed* that the local and long distance companies contributed equally to the pool, and its order provides that the pool surplus should therefore be distributed pro-rata. Thus, the order is unlawful because it violates R.C. 4903.09. A hearing should have been held to resolve the conflicting views of the parties involved in this issue and to enable the PUCO to gather information on which to base a more equitable distribution of the pool surplus.

Again, I must express my disillusionment with the manner in which the majority reaches its conclusion to affirm the PUCO order. This court is under a statutory duty to determine if a PUCO order is unlawful or unreasonable. Simply deferring to the decisions of the PUCO, in my view, is an evasion of the responsibility placed upon this court pursuant to R.C. 4903.13.

Based upon the foregoing, I would reverse and remand this case for further proceedings.

---

gave MCI an opportunity to substantiate its allegations at an evidentiary hearing before it promulgated the order. In this respect, the "notice and comment" procedure was obviously deficient.