MCI TELECOMMUNICATIONS CORPORATION, APPELLANT, *v.*
PUBLIC UTILITIES COMMISSION OF OHIO, APPELLEE.

[Cite as MCI Telecommunications Corp. *v.* Pub. Util. Comm. (1988),
38 Ohio St. 3d 266.]

(No. 87-1087—Submitted May 25, 1988—Decided August 31, 1988.)

*Stephanie D. Pestello, Anne E. Johnston* and *Marcia C. Alterman,* for appellant.

*Anthony J. Celebrezze, Jr.,* attorney general, *Robert S. Tongren, Ann E. Henkener* and *James B. Gainer,* for appellee.

*William A. Spratley,* consumers' counsel, *Bruce J. Weston* and *Barry Cohen,* for intervenor.

*Mark H. Longenecker, Jr.,* urging affirmance for *amicus curiae,* Cincinnati Bell Telephone Co.

*Donald W. Morrison, M. Lee Graft* and *Charles S. Rawlings,* urging affirmance for *amicus curiae,* Ohio Bell Telephone Co.

*Bruce Kazee,* urging affirmance for *amicus curiae,* GTE MTO, Inc.

*Ellen A. D'Amato,* urging affirmance for *amicus curiae,* United Telephone Co. of Ohio.

*J. Raymond Prohaska,* urging affirmance for *amicus curiae,* Ohio Telephone Assn.

WRIGHT, J. MCI has raised four issues in which it alleges that the PUCO's March 12, 1987 order (as clarified by the April 29, 1987 order) should be found unlawful and unreasonable:

A. The PUCO violated the Due Process Clauses of the Ohio and United States Constitutions and the statutes of Ohio by issuing the March 12, 1987 order without holding an evidentiary hearing.

B. The decisions made and actions taken by the PUCO were not adequately based upon findings of fact since the PUCO did not have a sufficient record to draw from.

C. The actions taken by the PUCO were not within its statutorily enacted authority.

D. The decision and action of the PUCO concerning the final transition rate restoral plan discriminated in favor of the local exchange companies and their customers.

In considering the allegations brought by MCI, the scope of judicial review of PUCO orders is set forth in R.C. 4903.13, which states in pertinent part:

"A final order made by the public utilities commission shall be reversed, vacated, or modified by the Supreme Court on appeal, if, upon consideration of the record, such court is of the opinion that such order was unlawful or unreasonable."

Under the "unlawful or unreasonable" standard specified in R.C. 4903.13, this court will not reverse or modify a PUCO decision as to questions of fact where the record contains sufficient probative evidence to show that the PUCO's determination is not manifestly against the weight of the evidence and is not so clearly unsupported by the record as to show misapprehension, mistake, or willful disregard of duty. *Dayton Power & Light Co.* v. *Pub. Util. Comm.* (1983), 4 Ohio St. 3d 91, 4 OBR 341, 447 N.E. 2d 733; *Columbus* v. *Pub. Util. Comm.* (1979), 58 Ohio St. 2d 103, 12 O.O. 3d 112, 388 N.E. 2d 1237. This court does, however, have complete and independent power of review as to questions of law. Legal issues are, therefore, subjected

to a more intensive examination than are factual questions. *Consumers' Counsel* v. *Pub. Util. Comm., supra; Consumers' Counsel* v. *Pub. Util. Comm.* (1983), 4 Ohio St. 3d 111, 4 OBR 358, 447 N.E. 2d 749. We assess MCI's objections with these standards in mind. *Armco, Inc.* v. *Pub. Util. Comm.* (1982), 69 Ohio St. 2d 401, 23 O.O. 3d 361, 433 N.E. 2d 923.

### A

The first issue that MCI has raised is that the PUCO's failure to give notice of its intended actions and to hold a public hearing violated the due process requirements of the Ohio and United States Constitutions and applicable Ohio statutes, specifically R.C. 4905.26.

As discussed in *MCI Telecommunications Corp.* v. *Pub. Util. Comm., supra (MCI-I)*, this court has repeatedly held that a utility ratepayer has no constitutional right to notice and a hearing in rate-related matters if no statutory right to a hearing exists. In this case, MCI and the OCC argue that a hearing is required by virtue of R.C. 4905.26.

R.C. 4905.26 states, in pertinent part:

"Upon complaint in writing against any public utility by any person, firm, or corporation, or upon the initiative or complaint of the public utilities commission, that any rate, fare, charge, toll, rental, schedule, classification, or service, or any joint rate, fare, charge, toll, rental, schedule, classification, or service rendered, charged, demanded, exacted, or proposed to be rendered, charged, demanded, or exacted, is in any respect unjust, unreasonable, unjustly discriminatory, unjustly preferential, or in violation of law, or that any regulation, measurement, or practice affecting or relating to any service furnished by said public utility, or in connection with such service, is, or will be, in any respect unreasonable, unjust, insufficient, unjustly discriminatory, or unjustly preferential, or that any service is, or will be, inadequate or cannot be obtained, and, upon complaint of a public utility as to any matter affecting its own product or service, if it appears that reasonable grounds for complaint are stated, the commission shall fix a time for hearing and shall notify complainants and the public utility thereof, and shall publish notice thereof in a newspaper of general circulation in each county in which complaint has arisen. * * *"

The language of this statute obviously requires the PUCO to give notice and conduct a hearing before ordering a change in utility rates. This, of course, is precisely what the PUCO did. Prior to the adoption of the May 21, 1984 order, the PUCO held a lengthy public hearing in which MCI and several other interested parties participated. If MCI had objections to the actions that were about to be implemented, it should have made its objections within that time frame and preferably in that forum. Nothing in the record indicates that MCI was denied its right to be heard at these hearings, nor does MCI raise the allegation now. PUCO's May 21, 1984 order established the basic mechanism for determining access charges for intrastate interexchange service in Ohio. Included in this plan were the "mirroring of the FCC's rates" provision, the *pro rata* distribution of any excess funds, and the supervision of the excess fund pool. Nothing in this order was hidden or misleading. The PUCO's intended plan was made plain for all to see and the hearing gave all parties a chance to voice objections. If MCI or anyone else had an objection to this order, an appeal from this order was the appropri-

ate method by which to contest the action. However, no appeals were taken from the order.

Since the May 21, 1984 order, all subsequent PUCO actions in PUCO No. 83-464-TP-COI have occurred under a notice and comment procedure. MCI has had ample opportunity to advocate its position regarding its entitlement to surplus funds by submitting comments and replies to the submissions of other parties. Nowhere in the statutes is the PUCO required to give a public hearing to each and every objection that is raised to its proposed actions. Such a requirement would literally hamstring the PUCO. The broad authority of the PUCO in matters such as this is well-established. See *MCI-I, supra.* We hold that MCI had no constitutional right to a public hearing in this matter under the facts of this case. The system adopted by the PUCO, *i.e.,* submitting comments and replies to the submissions of the parties, adequately protected the rights of MCI in this generic rate-making process.

### B

The second issue raised by MCI is that the PUCO's decision was not adequately based upon findings of fact because the PUCO did not have an adequate record from which to draw. The main contention of MCI is that R.C. 4903.09 has been violated. R.C. 4903.09 states:

"In all contested cases heard by the public utilities commission, a complete record of all of the proceedings shall be made, including a transcript of all testimony and of all exhibits, and the commission shall file, with the records of such cases, findings of fact and written opinions setting forth the reasons prompting the decision arrived at, based upon said findings of fact."

The purpose of R.C. 4903.09 is to enable this court to review the action of the commission without reading the voluminous records in Public Utilities Commission cases. See *Commercial Motor Freight, Inc.* v. *Pub. Util. Comm.* (1951), 156 Ohio St. 360, 46 O.O. 210, 102 N.E. 2d 842. Previous cases have found that the requirements of R.C. 4903.09 have been satisfied by orders which incorporated attorney examiner reports, commission secretary reports, or testimony from the proceeding. In fact, where enough evidence and discussion are found in an order to enable the PUCO's reasoning to be readily discerned, this court has found substantial compliance with R.C. 4903.09 and held that the lack of specific findings may be simply a technical defect that would not result in invalidation of the order. *Consumers' Counsel* v. *Pub. Util. Comm., supra; Braddock Motor Freight, Inc.* v. *Pub. Util. Comm.* (1963), 174 Ohio St. 203, 22 O.O. 2d 173, 188 N.E. 2d 162.

In the case at bar, the PUCO order clearly stated the facts and findings on which it based its decision. In deciding that the intrastate access rates should be capped at present levels or reduced, the PUCO's order expressly considered the original access charge proceedings, all interim orders, proposals, and comments, including the February 11, 1986 order affirmed by this court, the fact that interexchange carriers have consistently benefited by steadily decreasing access charges since 1983, and the specific proposals, comments and reply comments submitted in this case. PUCO No. 83-464-TP-COI (sub-files A, B and C); *MCI-I, supra.* These factors—plus the commission's unsuccessful effort to obtain information needed to establish company-specific, cost-based access charges—adequately specify the commission's basis for its ruling and give this court more than adequate notice of its reasoning. As such, the requirements of R.C. 4903.09

are satisfied and MCI's allegation is without merit.

### C

MCI's third contention is that the March 12, 1987 order is unlawful or unreasonable because the PUCO had no statutory authority to establish the LEC Hardship Fund. As stated, the fund was to offset any possible revenue shortfalls that might occur during the 1986 pool phase-out. MCI alleged that the PUCO established this fund without prior notice or record support in violation of R.C. 4903.09.

As to MCI's contention that it was without prior notice of the PUCO's intentions to create this fund, we find no merit in such a claim. The commission first stated its intention to establish this fund in its February 11, 1986 order. When MCI made its appeal of that order, it failed to raise this issue. Furthermore, the commission has, on two separate occasions, specifically approved hardship relief from the fund for two companies. MCI chose not to appeal these decisions. The record belies MCI's claim that it was without prior notice of the LEC Hardship Fund.

Likewise, MCI's contention that the PUCO established the Hardship Fund without adequate record support or findings flies in the face of the record. To the contrary, the continuation of the LEC Hardship Fund was based upon record evidence when it was created in the February 11, 1986 order and subsequently affirmed by this court in *MCI-I*. The record contained approval of actual hardship relief from the fund prior to the commission's decision in the case at bar. One could hardly ask for better evidence of the necessity for the fund or the appropriateness of its continuation than the actual hardship situations documented in the record before this court.

Following this court's previous decisions that the PUCO has broad discretion in regulating and supervising the restructuring of the Ohio telecommunications industry, we find that the actions taken by the PUCO in establishing the LEC Hardship Fund were within its statutory authority.

### D

The final issue raised by MCI is that the action taken by the PUCO in establishing a final transition rate restoral plan discriminates in favor of the LECs and their customers. In support of this allegation, MCI has cited R.C. 4905.22, 4905.33 and 4905.35.

R.C. 4905.22 essentially requires that utilities provide necessary and adequate service and facilities at just and reasonable rates. R.C. 4905.33 and 4905.35 are anti-discrimination statutes that prohibit "unreasonable" or "undue" discrimination or preference in utility service and rates.

In support of its position that these statutes have been violated, MCI has raised some of the same basic arguments that were raised and rejected by this court in *MCI-I*. MCI asserts that three of the PUCO's decisions are violative of the "discrimination" statutes: (1) the commission's failure to establish company-specific cost-based rates, (2) the commission's disposition of the LEC Reserve Fund and corresponding local exchange company rate reduction, and (3) the commission's establishment of a final transition rate restoral mechanism.

The first two of these issues were addressed by the commission in its findings in PUCO No. 83-464-TP-COI (February 11, 1986) and affirmed by this court in *MCI-I*. MCI's arguments were essentially based on the assumption that the interexchange carrier access service charges were the only source of the pool surplus funds. The

PUCO, however, concluded that other sources, such as the local exchange company toll revenues, also contributed substantially to this surplus. In *MCI-I*, this court found the conclusion reached by the PUCO to be reasonable and lawful. We further found that "the PUCO's actions in requiring the local exchange company rate reductions were not unjust or unreasonable. The PUCO has broad discretion in regulating and supervising the restructuring of the Ohio telecommunications industry. We find that the PUCO's actions in this regard are not against the manifest weight of the evidence or so clearly unsupported by the record as to constitute mistake, misapprehension or willful disregard of duty." *MCI-I, supra,* at 313-314, 513 N.E. 2d at 345.

All three of these issues were addressed by the commission in its clarification order of April 29, 1987. We find the commission's establishment of a final transition rate restoral mechanism to be reasonable and lawful.

For the reasons stated above, we find that the PUCO's March 12, 1987 order (as clarified by the April 29, 1987 order) was lawful and reasonable and is hereby affirmed.

*Order affirmed.*

MOYER, C.J., SWEENEY, HOLMES and DOUGLAS, JJ., concur.

LOCHER and H. BROWN, JJ., dissent.

LOCHER, J., dissenting. Because the March 12, 1987 order is unlawful and unreasonable, I must respectfully dissent.

MCI was unlawfully deprived of its right to notice and hearing pursuant to R.C. 4905.26 prior to the issuance of this order. MCI was entitled to notice and hearing pursuant to R.C. 4905.26 because the PUCO relied upon R.C. 4905.26 as authority to set access rates in these proceedings. R.C. 4905.26 provides:

"Upon complaint in writing against any public utility by any person, firm, corporation, or *upon the initiative or complaint of the public utilities commission, that any rate, fare, charge, toll, rental, schedule, classification, or service,* or any joint rate, fare, charge, toll, rental, schedule, classification, or service *rendered, charged, demanded, exacted, or proposed to be rendered, charged, demanded, or exacted, is in any respect unjust, unreasonable, unjustly discriminatory, unjustly preferential, or in violation of law,* or that any regulation, measurement, or practice affecting or relating to any service furnished by said public utility, or in connection with such service, is, or will be, in any respect unreasonable, unjust, insufficient, unjustly discriminatory, or unjustly preferential, or that any service is, or will be, inadequate or cannot be obtained, and, upon complaint of a public utility as to any matters affecting its own product or service, *if it appears that reasonable grounds for complaint are stated, the commission shall fix a time for hearing and shall notify complainants and the public utility thereof,* and shall publish notice thereof in a newspaper of general circulation in each county in which complaint has arisen. Such notice shall be served and publication made not less than fifteen days nor more than thirty days before hearing and shall state the matters complained of. The commission may adjourn such hearing from time to time." (Emphasis added.)

It is well-established that the PUCO has the power to invoke its authority under R.C. 4909.15(D) to fix new rates and order them to be substi-

tuted for existing rates following the completion of an R.C. 4905.26 investigation and hearing. *Ohio Utilities Co. v. Pub. Util. Comm.* (1979), 58 Ohio St. 2d 153, 12 O.O. 3d 167, 389 N.E. 2d 483. The PUCO used this power when it created the system for determining access charges in its order of May 21, 1984.

The majority finds that R.C. 4905.26 was properly followed because a hearing was held in 1983, prior to the May 21, 1984 order. However, this is *not* enough. There have been no hearings since 1983, and R.C. 4905.26 still controls the proceedings in this matter. See *MCI Telecommunications Corp. v. Pub. Util. Comm.* (1987), 32 Ohio St. 3d 306, 314, 513 N.E. 2d 337, 346 (Locher, J., dissenting). R.C. 4905.26 is the statutory authority pursuant to which the PUCO can initiate and resolve various issues in this access-charge case. The PUCO cites no specific statutory authority or any case law to support its position that it may establish rates in a generic rule-making proceeding. There is no statute that authorizes the PUCO to set rates through such quasi-legislative rule-making activities. As a creature of statute, the PUCO may not exercise jurisdiction beyond that conferred by statute. *Dayton Communications Corp. v. Pub. Util. Comm.* (1980), 64 Ohio St. 2d 302, 18 O.O. 3d 478, 414 N.E. 2d 1051. R.C. 4905.26 is the only statutory authority for rate determinations in this case and it requires notice and a hearing.

The March 12, 1987 order made the following significant determinations: (1) it established a ceiling for the access charges which local telephone companies could charge to long distance companies; (2) it set a date for discontinuation of the local companies' pooling of access-charge collections; (3) it provided for the distribution of funds in the pool; (4) it established regulations and practices as to how access charges will be billed by local companies; and (5) it required reductions in the local companies' long distance rates. Such an order should not have been made without prior notice and public hearings. The comments submitted in the deficient "notice and comment" procedure show conflicting opinions as to the facts involved. These conflicting opinions are sufficient to show that "reasonable grounds for complaint" existed under R.C. 4905.26. The PUCO never gave MCI any opportunity to try to substantiate its allegations at an evidentiary hearing. Such a hearing was requested and the PUCO should have granted that hearing as required by R.C. 4905.26.

Furthermore, this court has held that PUCO orders should be reversed and remanded if they are not based upon the record or any specific finding of fact. See *Ideal Transp. Co. v. Pub. Util. Comm.* (1975), 42 Ohio St. 2d 195, 71 O.O. 2d 183, 326 N.E. 2d 861; *Motor Service Co. v. Pub. Util. Comm.* (1974), 39 Ohio St. 2d 5, 68 O.O. 2d 3, 313 N.E. 2d 803. Because of the lack of hearings in the cause *sub judice,* the PUCO did not have a sufficient evidentiary record upon which to base the instant order.[3]

There can be no doubt that MCI

---

[3] In any event, some form of hearing should be held to determine these matters. The necessity of a hearing is best stated by Commissioner Gaylord in her dissenting opinion: "The Commission has said repeatedly since 1984 in various Entries and Opinions and Orders that we are interested in obtaining company-specific, cost-based intrastate access charges. I see no reason not to evaluate costs at the state level. This would involve obtaining cost figures, *probably through a hearing* * * *. We have no

was denied due process of law when the PUCO issued its March 12, 1987 order without holding a hearing and giving notice to the parties under R.C. 4905.26. Today's decision allows the PUCO to exceed its statutory authority. Moreover, the order was based upon an insufficient record as a consequence of the lack of a hearing. There-fore, I find such order to be unreasonable and unlawful.

Based on the foregoing, I would reverse and remand this case for further proceedings.

H. BROWN, J., concurs in the foregoing dissenting opinion.

---

idea where we stand in relationship to true costs * * *. *We should have a hearing to* *find this out and do our evaluating based on* *solid numbers."* (Emphasis added.)