OPINIONS OF THE SUPREME COURT OF OHIO
     The full texts of the opinions of the Supreme Court of Ohio
are being transmitted electronically beginning May 27, 1992,
pursuant to a pilot project implemented by Chief Justice Thomas J.
Moyer.
     Please call any errors to the attention of the Reporter's
Office of the Supreme Court of Ohio.  Attention:  Walter S.
Kobalka, Reporter, or Deborah J. Barrett, Administrative
Assistant.  Tel.:  (614) 466-4961; in Ohio 1-800-826-9010.  Your
comments on this pilot project are also welcome.
     NOTE:  Corrections may be made by the Supreme Court to the
full texts of the opinions after they have been released
electronically to the public.  The reader is therefore advised to
check the bound volumes of Ohio St.3d published by West Publishing
Company for the final versions of these opinions.  The advance
sheets to Ohio St.3d will also contain the volume and page numbers
where the opinions will be found in the bound volumes of the Ohio
Official Reports.

Morrow Chamber of Commerce et al., Appellants, v. Public Utilities
Commission of Ohio et al., Appellees.
[Cite as Morrow Chamber of Commerce v. Pub. Util. Comm.
(1993),      Ohio St.3d      .]
Public Utilities Commission -- Telephone companies -- Commission's
     determination denying flat-rate extended area service not
     unreasonable or unlawful, when.
     (No. 92-2380 -- Submitted May 26, 1993 -- Decided August 18,
1993.)
     Appeal from the Public Utilities Commission of Ohio, No.
90-1760-TP-PEX.
     Appellants, Morrow Chamber of Commerce and numerous other
subscribers of the Morrow exchange of United Telephone Company of
Ohio ("United"), filed a petition with the Public Utilities
Commission of Ohio, appellee, alleging that their existing local
telephone service was inadequate.  R.C. 4905.26.  As to relief
sought, they requested that the commission order the
implementation of two-way, nonoptional, flat-rate extended area
service ("flat-rate EAS") between the Morrow exchange of United
and the Cincinnati and Little Miami exchanges of Cincinnati Bell
Telephone Company.  Implementation of flat-rate EAS would replace
existing message toll service (traditional long distance service),
and optional local service offerings, with toll-free local
calling.  However, the service would cause all subscribers'
monthly base rates for local service to increase, regardless of
their individual need to call the requested exchanges.  The
optional local service offerings available to Morrow subscribers
at the time they filed their petition included Econo-Call
service.  Under that service, one-party residential subscribers
could place calls to the Cincinnati exchange for a flat monthly
charge of $5.30 and a flat per-call charge of $0.35.
     It was United's position at the hearing in this matter that
the commission order the implementation of two-way, nonoptional,
measured-rate EAS ("measured-rate EAS"), if it deemed any relief
was warranted.  Under this service, Morrow subscribers who placed
calls to the involved exchanges would receive an approximate
seventy-percent discount from existing message toll rates.  There
would be no increase to subscribers' basic monthly rates and,

thus, only those subscribers who placed calls to the requested exchanges would pay for the service, unlike flat-rate EAS.

After a hearing and upon consideration of the guidelines set forth in Ohio Adm. Code 4901:1-7-04,[1] the commission ordered measured-rate EAS instituted as the appropriate remedy in this case.

The cause is now before this court upon an appeal as a matter of right.

Heath & Associates and L. Kathleen Porter, for appellants.

Lee I. Fisher, Attorney General, James B. Gainer and Steven T. Nourse, Assistant Attorneys General, for appellee.

Frost & Jacobs and Mark H. Longenecker, Jr., for intervening appellee, Cincinnati Bell Telephone Company.

Per Curiam.  As their first proposition of law, appellants argue that the commission's denial of flat-rate EAS between the Morrow and Cincinnati exchanges is against the manifest weight of the evidence.  In the alternative, they argue that the commission erred by not ordering United to retain Econo-Call service upon the implementation of measured-rate EAS.  For the reasons which follow, we reject appellants' arguments and affirm the commission's order.

I

As indicated above, Ohio Adm. Code 4901:1-7-04 sets forth the guidelines which the commission is to consider in making its determination as to the adequacy of a telephone exchange's existing service under R.C. 4905.26, and the appropriate remedy, if any, under R.C. 4905.381.  See Arcadia Tel. Co. v. Pub. Util. Comm. (1979), 58 Ohio St.2d 180, 12 O.O.3d 182, 389 N.E.2d 498. Those guidelines generally include the volume and distribution of calling between the exchanges (the calling statistics); the location of various services, products and activities in each exchange (the community of interest factors); and the cost to the telephone companies in implementing the proposed service.  The rule further provides that the commission is not limited to the guidelines listed therein in making its determinations, but may consider other factors as well.

In arguing that the commission's denial of flat-rate EAS is against the manifest weight of the evidence, appellants focus narrowly on the commission's computation of the calling statistics.  The commission computed the statistics based only upon message toll data, finding the calling rate (the volume of calling) to be 3.56 calls per main station per month and the distribution of calling (the number of subscribers making one or more calls to the Cincinnati exchange during the study month) to be 53 percent.  Appellants contend that the commission erred by not specifically including in the statistics the calls placed by Morrow's six hundred forty-eight Econo-Call subscribers.  They reason that, had the commission done so, the calling statistics would have been significantly higher and sufficient to warrant the implementation of flat-rate EAS.

EAS proceedings originated as a means to provide rate relief to message toll subscribers of a given exchange when they are unable to meet their daily calling needs on a local basis.  See Ohio Adm. Code 4901:1-7-01(H) ("'Extended area service' (EAS) means a type of telephone service furnished at monthly flat or

measured rates, permitting subscribers of a given exchange, to place calls to and receive calls from one or more other exchange areas without being assessed message toll telephone charges for each message."); and Ohio Adm. Code 4901:1-7-04 ("'Extended area service' is not a substitute for message toll telephone service but rather a service designed to meet the day-by-day calling requirements of subscribers which cannot properly be met with local calling confined to a single exchange area.").  As a result, Ohio Adm. Code 4901:1-7-04(A)(1) and (2) define the calling rate and distribution of calling in terms of message toll traffic, and the commission computed those statistics accordingly.

This case represents a departure from the traditional EAS proceeding in that a significant number of Morrow subscribers do not utilize message toll service to contact the Cincinnati exchange, but instead subscribe to the alternative Econo-Call service.  We agree with the underlying premise of appellants' argument that, in such cases, calling statistics based only upon message toll data understate the volume and distribution of traffic between the involved exchanges.  However,  noting that the pricing structures of alternative services, including Econo-Call, generally tend to stimulate calling from one exchange to another, we cannot agree that the appropriate remedy is to require the commission to depart from its rules and include calls placed over alternative services in the traditional calling statistics.  To do so would skew the statistics for comparative and precedential purposes.  Rather, in cases such as this, we find it reasonable for the commission to generally consider the calls placed under alternative services in making its determination, as the record reflects it has done here.  Indeed, this approach is specifically contemplated by Ohio Adm. Code 4901:1-7-04, which authorizes the commission to consider other factors in addition to the criteria listed therein.

Finally, we note that the calling statistics alone are not determinative as to whether EAS should be ordered and, if so, the form it should take.  Rather, the commission must consider the calling statistics along with the various community-of-interest factors listed in Ohio Adm. Code 4901:1-7-04(A)(3), as well as the costs to the telephone companies of implementing the proposed services.  Ohio Adm. Code 4901:1-7-04(B)(1).  In this case, the record reflects that Morrow subscribers are able to obtain the vast majority of their daily calling requirements within their local calling area, and that the cost to implement measured-rate EAS is less than the cost of the alternative flat-rate service. Both of these factors support the commission's determination that measured-rate EAS is the appropriate remedy in this case.

Considering all of these factors, and recognizing the commission's broad discretion under R.C. 4905.381 to order an appropriate remedy in adequacy of service proceedings, we cannot conclude that the commission's determination denying flat-rate EAS was either unreasonable or unlawful under the scope of review provided in R.C. 4903.13.  See MCI Telecommunications Corp. v. Pub. Util. Comm. (1988), 38 Ohio St.3d 266, 268, 527 N.E.2d 777, 780 (This court will not reverse the commission "as to questions of fact where the record contains sufficient probative evidence to show that the PUCO's determination is not manifestly against the manifest weight of the evidence and is not so clearly unsupported by the record as to show misapprehension, mistake, or willful

disregard of duty.").

                              II

     In the alternative, appellants allege that Econo-Call
subscribers will be charged more for the calls they place to the
Cincinnati exchange if measured-rate EAS is instituted,2 and argue
that the commission erred by not ordering United to provide both
services.

     It is undisputed on the record in this proceeding that
United's billing system can accommodate but one of the above
services.  Appellants have offered no evidence or arguments as to
the feasibility or reasonableness of United revising its billing
system to accommodate both services, nor do they contend that
Econo-Call service should be retained in lieu of measured-rate EAS
(apparently recognizing that the latter will benefit the majority
of Morrow subscribers).  Accordingly, we affirm the commission's
determination ordering only the measured-rate service.

                                   Order affirmed.

     Moyer, C.J., A.W. Sweeney, Douglas, Wright,  Resnick, F.E.
Sweeney and Pfeifer, JJ., concur.


FOOTNOTES
1    Ohio Adm. Code 4901:1-7-04 provides in part:
     "Extended area service" is not a substitute for message toll
telephone service but rather a service designed to meet the
day-by-day calling requirements of subscribers which cannot
properly be met with local calling confined to a single exchange
area.  While it is recognized that the factors which determine
whether 'extended area service' should be provided in a given
situation are difficult of determination, even more difficult to
evaluate, and are not includable in a mathematical formula, it is
believed that they should be set forth generally as guides.
     "When confronted with a situation suggesting a possible
'extended are service' requirement a telephone utility shall
consider, but not limit itself to, all of the following factors:
     "(A) Community of interest factors:
     "(1) The volume of message toll telephone traffic between the
exchanges, i.e., the calling rate.
     "(2) The distribution of the calling to determine whether the
traffic is originated by the subscribers generally or by only a
relatively few subscribers.
     "***
     "(3) The location of various services, products, and
activities, a partial list of which is set forth below.
     "(a) Population movement.
     "(b) School activities.
     "(c) Police and fire service.
     "(d) Other governmental services.
     "(e) Medical, dental, and veterinarian service.
     "(f) Churches.
     "(g) Agricultural organizations.
     "(h) Shopping and service centers.
     "(i) Employment centers.
     "(j) Social interest.
     "(B) Other pertinent factors:
     "(1) Investment and cost considerations are of importance.
It would not be in the public interest for a telephone utility to
enter into exceptionally heavy investments in facilities and incur

exceptionally high costs in situations where the 'extended area service' requirement was slight.* * *"

2    Appellants base their allegation on a comparison of a hypothetical ten-minute call to the Cincinnati exchange under Econo-Call at $0.35 per call and under measured-rate EAS at $0.073 or $0.044 per minute, depending on the time of day.  Appellants' analysis is flawed in that it fails to take into account Econo-Call's $5.30 flat monthly charge.  Considering the proper pricing structure of that service, the effect of the commission's order on Econo-Call subscribers becomes speculative on this record.