[This opinion has been published in *Ohio Official Reports* at 88 Ohio St.3d 549.]

AT&T COMMUNICATIONS OF OHIO, INC., APPELLANT, *v.* PUBLIC UTILITIES

COMMISSION OF OHIO, APPELLEE.

MCI TELECOMMUNICATIONS CORPORATION, APPELLANT, *v.* PUBLIC UTILITIES

COMMISSION OF OHIO, APPELLEE.

[Cite as *AT&T Communications of Ohio, Inc. v. Pub. Util. Comm.*, 2000-Ohio-
423.]

*Public Utilities Commission—Telephone companies—Intrastate switched access*
*charges—Commission order affirmed, when.*

(Nos. 98-28 and 98-30—Submitted December 15, 1999—Decided May 31,
2000.)

APPEALS from the Public Utilities Commission of Ohio, No. 96-336-TP-CSS.

———————————

{¶ 1} These appeals involve an order of the Public Utilities Commission of
Ohio ("commission") in PUCO No. 96-336-TP-CSS ("complaint case"). In April
1996, AT&T Communications of Ohio, Inc. ("AT&T") filed a complaint with the
commission, alleging that intrastate switched access charges levied by Ameritech
Ohio ("Ameritech") violated R.C. 4905.33 and 4905.35. MCI Telecommunications
Corporation ("MCI"), Time Warner Communications, Inc. ("Time Warner"), and
the Office of Consumers' Counsel ("OCC") intervened. MCI and OCC asserted
positions substantially similar to those asserted by AT&T.

{¶ 2} Evidentiary hearings were conducted, followed by briefs from AT&T,
MCI, OCC, and Ameritech. On September 18, 1997, the commission issued its
Opinion and Order in the complaint case in which it (1) found that AT&T failed to
sustain its burden of proof that Ameritech had violated the several statutes and (2)
ordered that the complaint be denied.

**{¶ 3}** All parties to the complaint case, with the exception of Time Warner, filed applications for rehearing, all of which the commission denied in its Entry on Rehearing, dated November 6, 1997.

**{¶ 4}** On January 5, 1998, AT&T filed its notice of appeal in this court's case No. 98-28, and on the same date MCI filed its notice of appeal in this court's case No. 98-30. Ameritech intervened in both appeals as an appellee and OCC provided a brief *amicus curiae* in support of appellant AT&T in case No. 98-28. We granted appellants' motions to consolidate the two appeals and the causes are before us upon appeals as of right.

––––––––––––––––––

*David J. Chorzempa; Vorys, Sater, Seymour & Pease, L.L.P., Sandra J. Anderson, Benita Kahn* and *W. Evan Price II*, for appellant AT&T Communications of Ohio, Inc.

*Bell, Royer & Sanders Co., L.P.A., Barth E. Royer* and *Judith B. Sanders*, for appellant MCI Telecommunications Corporation.

*Betty D. Montgomery,* Attorney General, *Duane W. Luckey, Steven T. Nourse* and *Stephen A. Reilly*, Assistant Attorneys General, for appellee Public Utilities Commission of Ohio.

*Michael T. Mulcahy; Porter, Wright, Morris & Arthur, Daniel R. Conway, Samuel H. Porter* and *Robert W. Trafford*, for intervening appellee Ameritech Ohio.

*Robert S. Tongren*, Ohio Consumers' Counsel, *Yolanda V. Vorys* and *David C. Bergmann*, Assistant Consumers' Counsel, urging reversal in case No. 98-28, for *amicus curiae*, Ohio Consumers' Counsel.

––––––––––––––––––

**FRANCIS E. SWEENEY, SR., J.**

**{¶ 5}** The complaint case proceedings before the commission that are the subject of this appeal involved the legality and reasonableness of Ameritech's intrastate "switched access charges." Access charges are charges that long distance

telephone companies (also called "Interexchange Carriers" or "IXCs") pay to local service telephone companies (also called "Local Exchange Carriers" or "LECs") for the use of their local network facilities to originate and terminate long distance ("interexchange") calls. The access charge system was an outgrowth of the divestiture of the Bell Operating Companies (also known as the "BOCs"), including Ameritech. The divestiture was the result of *United States v. Am. Tel. & Tel. Co.* (D.D.C.1982), 552 F.Supp. 131, affirmed *sub nom.*, *Maryland v. United States* (1983), 460 U.S. 1001, 103 S.Ct. 1240, 75 L.Ed.2d 472, in which the federal district court concluded that the Federal Communications Commission ("FCC") had responsibility for setting post-divestiture access charges for interstate interexchange service, and that state utility commissions had responsibility for setting access charges for intrastate interexchange service.

{¶ 6} Through a series of orders during 1984-1987, the commission established an intrastate access charge plan for Ohio's LECs. Under the commission's plan, the LECs, including Ameritech, "mirrored" (albeit with certain exceptions) the federal approach and the LECs' interstate access rates.[1] That is, rate changes approved by the FCC were automatically implemented in Ohio, except when ordered otherwise by the commission.

{¶ 7} In 1994, the commission reiterated its policy of mirroring when it approved Ameritech's application for an alternative form of regulation ("Alternative Regulation Plan") in PUCO No. 93-487-TP-ALT,[2] capping the price for intrastate switched access service at the mirrored interstate rates. This court overturned the commission's approval of that plan on procedural grounds in *Time*

---

1. This court recounted in detail the various orders issued during 1984-1987 by the commission in a case that established the access charge framework in *MCI Telecommunications Corp. v. Pub. Util. Comm.* (1987), 32 Ohio St.3d 306, 513 N.E.2d 337 ("*MCI-I*"). See, also, *MCI Telecommunications Corp. v. Pub. Util. Comm.* (1988), 38 Ohio St.3d 266, 527 N.E.2d 777 ("*MCI-II*").

2. *In the Matter of the Application of the Ohio Bell Tel. Co. for Approval of an Alternative Form of Regulation* (Nov. 23, 1994), PUCO No. 93-487-TP-ALT, at 72.

*Warner AxS v. Pub. Util. Comm.* (1996), 75 Ohio St.3d 229, 661 N.E.2d 1097. However, later in 1996, the Ohio General Assembly reinstated the plan, including mirroring, effective as of the original effective date of the plan. See Settlement Agreement, *In the Matter of the Implementation of Substitute Senate Bill 306 or Substitute House Bill 734 of the 121st General Assembly* (May 20, 1996), PUCO No. 96-532-TP-UNC.

{¶ 8} AT&T's complaint before the commission pursuant to R.C. 4905.26 alleged that Ameritech's intrastate switched access rates were excessive and should be reduced, and that they were preferential and discriminatory in violation of R.C. 4905.33 and 4903.35.

{¶ 9} This appeal presents several discrete issues for consideration by the court. The first is whether the pricing of intrastate switched access service must be cost-based.

{¶ 10} AT&T's position is that Ameritech must offer Ohio intrastate switched access services at rates based on the Long Run Service Incremental Costs ("LRSIC")[3] of providing those services. MCI's position is that the commission erred by refusing to establish Ameritech's intrastate access charges based on its economic cost of providing access service as determined in a separate commission proceeding. The cost-based access pricing referred to by MCI is the pricing of Unbundled Network Elements ("UNEs")[4] utilized in the provision of switched

---

3. Long Run Service Incremental Costs ("LRSIC"), Total Element Long Run Incremental Cost ("TELRIC"), Unbundled Network Elements ("UNES"), Incumbent Local Exchange Carrier ("ILEC"), Competitive Local Exchange Carrier ("CLEC"), and Competitive Access Providers ("CAPs") are terms of art which came into being post-divestiture, many of them in connection with the Telecommunications Act of 1996, which is referred to in footnote 6, *infra*.

4. See footnote 3, *supra*.

access service, as determined or to be determined by the commission's employing the TELRIC methodology used in Ameritech's "TELRIC case."[5,6]

{¶ 11} The appellants argue that the cost-based sale pricing of the UNEs used to furnish switched access service determines the cost of that service. The appellants then argue that switched access service should be provided to them at rates (or charges) no higher than the costs of providing that service so determined. However, the appellants provide no legal authority for the proposition that the commission is legally constrained from permitting rates for switched access service to be in excess of the costs of providing such service, and they offered no testimony or evidence of the costs of providing the service other than the costs determined in Ameritech's TELRIC case.

{¶ 12} As the commission noted in its order below, TELRIC-determined costs established in a proceeding separate from the complaint case might not be the proper costs for switched access service considered in a complaint proceeding involving the reasonableness of charges for such service. TELRIC-determined costs are forward-looking incremental costs only. On the other hand, switched

---

5. The commission reviewed Ameritech's TELRIC cost studies in *In the Matter of the Review of Ameritech Ohio's Economic Costs for Interconnection, Unbundled Network Elements, and Reciprocal Compensation for Transport and Termination of Local Telecommunications Traffic* (June 19, 1997), PUCO No. 96-922-TP-UNC.

6. In 1996, Congress passed the Telecommunications Act of 1996, Pub.L. No. 104-104, 110 Stat. 56, 61, which was designed, in part, to erode the monopolistic nature of the local telephone service industry by obligating the current providers of local phone service to facilitate the entry of competing companies into local telephone service markets across the country. Specifically, the 1996 Act forces an incumbent LEC (1) to permit a requesting new entrant in the incumbent LEC's local market to interconnect with the incumbent LEC's existing local network and thereby use the incumbent LEC's network to compete with the incumbent LEC in providing local telephone services (interconnection); (2) to provide its competing telecommunications carriers with access to individual elements of the incumbent LEC's own network on an unbundled basis (unbundled access); and (3) to sell to its competing telecommunications carriers, at wholesale rates, any telecommunications service that the incumbent LEC provides to its customers at retail rates in order to allow the competing carriers to resell the service. Sections 251(c)(2), (3), and (4), Title 47, U.S. Code. The Ohio General Assembly expressly sanctioned the commission's exercise of authority under the 1996 Act. See R.C. 4905.04(B).

access service charges might appropriately contain elements of historical, embedded costs traditionally employed in the ratemaking process. Also, there may be joint or common costs shared with UNEs other than UNEs employed in providing switched access service that should have been, but were not, considered in Ameritech's TELRIC case.

{¶ 13} We find that the appellants failed to show that the commission cannot allow Ameritech to charge rates for its intrastate switched access service that are in excess of the costs of providing that service. Moreover, appellants did not show that the proper costs of providing that service are the costs of the switched access-related UNEs determined in Ameritech's TELRIC case.

{¶ 14} The applications for rehearing filed below and the notices of appeal filed in these consolidated appeals include the appellants' contention that the commission erred in failing to find that Ameritech's switched access charges were so excessive as to be unjust and unreasonable under R.C. 4905.26, although AT&T's complaint before the commission failed explicitly to charge Ameritech with a violation of that statute.

{¶ 15} In support of that contention, the appellants again point out that the rates for switched access service exceed the TELRIC-determined costs of providing that service. AT&T refers the court to testimony in the complaint case to the effect that Ameritech's switched access rates are five times higher than the TELRIC-determined costs of providing switched access service. The appellants' position is that switched access rates must be strictly cost-based and, if the rates exceed the cost of providing switched access service, the rates are *ipso facto* unjust and unreasonable.

{¶ 16} However, Ameritech's switched access rates are an outgrowth of the Alternative Regulation Plan, under which intrastate switched access charges were capped at the mirrored interstate rates. According to the commission, interstate rates have been reduced from time to time, and such rate reductions were, and will

continue to be, a result of a combination of regulatory prescription and market forces. The commission observed that if mirroring is continued, the rates, being in part market-based, will incrementally over time achieve equivalency to costs.

{¶ 17} The appellants urged the commission to prescriptively cap Ameritech's intrastate switched access charges at Ameritech's cost of providing switched access service. However, the commission did not have any testimony or evidence before it that addressed the issue of Ameritech's cost of providing switched access service, other than references to costs of certain UNEs determined in the Ameritech TELRIC case. Moreover, the commission was not convinced that the TELRIC-determined costs constituted Ameritech's cost of providing switched access service.

{¶ 18} Rather than prescriptively tying switched access charges solely to the costs of providing switched access service, the commission chose to cap the intrastate switched access charges at the level of mirrored FCC-determined interstate switched access charges. The commission considered the mirrored switched access charges to be in part prescriptively determined and to be in part market-driven. As a matter of policy, the commission preferred the mirroring of switched access charges as opposed to tying them strictly to cost.

{¶ 19} Notwithstanding the appellants' opinions and assertions otherwise, there is nothing in the record in the complaint case to suggest that Ameritech's mirrored switched access charges were unjust or unreasonable under R.C. 4905.26. In fact, the commission's decisions were fully supported by the record below.

{¶ 20} Finally, the appellants argue that the switched access charges are in violation of R.C. 4905.33 and 4905.35, which prohibit preferential and discriminatory utility rates being charged to similarly situated customers for like service. Appellants contend that the cost to Ameritech of providing intrastate switched access service is less than its charges for that service, and, therefore, Ameritech, as an ILEC (see footnote 3, *supra*), benefits from the switched access

charges to the detriment of the appellants, which are IXC's, that pay the access charges. The appellants also point out that an IXC could purchase from Ameritech the UNEs necessary to provide switched access service to itself and would be required to pay only the TELRIC-determined cost-based prices for the UNEs, which are lower than the switched access charges payable by the appellants.

{¶ 21} However, the appellants, themselves, are IXCs, and their argument ignores the fact that, as IXCs, they could purchase from Ameritech the UNEs necessary to provide switched access service to themselves at the TELRIC-determined prices. Also, when an IXC purchases and uses the UNEs necessary to provide switched access service, it becomes a new entrant CLEC (see footnote 3, *supra*) with respect to provision of that service, making it an entity different from a carrier that provides strictly interexchange service, such as the appellants.

{¶ 22} *Allnet Communications Serv., Inc. v. Pub. Util. Comm.* (1994), 70 Ohio St.3d 202, 638 N.E.2d 516, which involved intrastate switched access charges that mirrored FCC-established interstate charges, determined that (1) for there to be a violation of R.C. 4905.33, there must be a showing that an entity similarly situated to the complainant is charged rates different from those charged the complainant for the same service, and (2) for there to be a violation of R.C. 4905.35, there must be a showing that an entity similarly situated to the complainant has received preferential or advantageous treatment by virtue of the charge payable by it compared to the charge payable by the complainant for the same service.

{¶ 23} The appellants have failed to make either showing. In fact, the evidence before the commission in the complaint case indicated that because both complainants below were IXCs, each would be required to pay the same switched access charges as were payable by the other, and that all other IXCs (which had not also become CLECs) would be required to pay the same switched access charges as were payable by the complainants.

{¶ 24} Thus, the appellants have failed to demonstrate that Ameritech's switched access charges did or could result in entities' similarly situated to the complainants paying different charges for switched access service than charges paid by the complainants. We find that no violation of R.C. 4905.33 has been shown.

{¶ 25} Likewise, the appellants have not demonstrated that Ameritech's switched access charges result in the appellants' being prejudiced or disadvantaged compared to IXC entities similarly situated to the complainant. Thus, no violation of R.C. 4905.35 has been shown.

{¶ 26} Appeals of commission decisions are subject to the standard of review contained in R.C. 4903.13, which provides:

"A final order made by the public utilities commission shall be reversed, vacated, or modified by the supreme court on appeal, if, upon consideration of the record, such court is of the opinion that such order was unlawful or unreasonable."

{¶ 27} This court has consistently interpreted the statutory standard of review as follows:

"In *MCI Telecommunications Corp. v. Pub. Util. Comm.* (1988), 38 Ohio St.3d 266, 268, 527 N.E.2d 777, 780, we repeated our interpretation of this standard, stating:

" 'Under the "unlawful or unreasonable" standard specified in R.C. 4903.13, this court will not reverse or modify a PUCO decision as to questions of fact where the record contains sufficient probative evidence to show the PUCO's determination is not manifestly against the weight of the evidence and is not so clearly unsupported by the record as to show misapprehension, mistake, or willful disregard of duty. *Dayton Power & Light Co. v. Pub. Util. Comm.* (1983), 4 Ohio St.3d 91, 4 OBR 341, 447 N.E.2d 733 * * * .' " *Ohio Edison Co. v. Pub. Util. Comm.* (1992), 63 Ohio St.3d 555, 556, 589 N.E.2d 1292, 1294.

{¶ 28} Our review of the record reveals that it is replete with testimony and evidence both supporting and challenging the commission's mirroring of interstate rates to establish a cap on Ameritech's intrastate switched access charges.

{¶ 29} Consideration of that record indicates to us that sufficient probative evidence was adduced before the commission to show that the commission's determinations were just and reasonable and not manifestly against the weight of the evidence. Nor were they so clearly unsupported by the record as to show misapprehension, mistake, or willful disregard of duty. Based on the record before it, the commission's decisions were lawful and reasonable under R.C. 4903.13.

{¶ 30} For the foregoing reasons, we affirm the order of the commission.

*Order affirmed.*

MOYER, C.J., DOUGLAS, FORD, COOK and LUNDBERG STRATTON, JJ., concur.

PFEIFER, J., dissents.

DONALD R. FORD, J., of the Eleventh Appellate District, sitting for RESNICK, J.

_____

**PFEIFER, J., dissenting.**

{¶ 31} It is easy to get lost in acronyms and terms of art when dealing with a case of this technical complexity. What we should not lose sight of is why we have a Public Utilities Commission, statutory and regulatory schemes, and appellate review. Government regulation and scrutiny exist to protect against the ill effects of monopolies, including price gouging.

{¶ 32} Here, Ameritech's switched access rates are five times higher than the costs of providing the service. The pricing should bear a reasonable relationship to the cost of providing the service. Under the current structure, there is no such reasonable relationship, and I would find that Ameritech's pricing scheme violates R.C. 4905.26.

{¶ 33} It is my sense that the PUCO has lost sight of its own big picture and has become too protective of local phone companies at the expense of better service and fairer pricing for Ohioans.

————————————