HOLLADAY CORPORATION, APPELLANT, *v.*
PUBLIC UTILITIES COMMISSION OF OHIO ET AL., APPELLEES.

[Cite as Holladay Corp. v. Pub. Util. Comm. (1980),
61 Ohio St. 2d 335.]

(No. 79-659—Decided March 26, 1980.)

336

*Messrs. Cross & Turner, Mr. James E. Cross* and *Mr. Bradley C. Smith,* for appellant.

*Mr. William J. Brown,* attorney general, *Mr. Marvin I. Resnik* and *Mr. Harris S. Leven,* for appellee.

*Mr. J. R. Newlin, Mr. Stephen F. Koziar* and *Mr. Jeffrey P. Startzman,* for intervening appellee.

WILLIAM B. BROWN, J.

I.

Appellant argues primarily that D P & L has violated R. C. 4905.33,[3] 4905.35[4] and the Equal Protection Clause of the Fourteenth Amendment by classifying appellant's bulk-metered multi-unit apartment buildings under its general service rate, which includes a demand charge,[5] while classifying appellant's individually-metered units under its residential rate, which does not include a demand charge.[6]

---

[3] In relevant part, R. C. 4905.33 provides:

"No public utility shall***charge***any person, firm or corporation a greater***compensation for any services rendered,***than it charges***any other person, firm or corporation for doing a like and contemporaneous service under substantially the same circumstances and conditions.***"

[4] R. C. 4905.35 provides:

"No public utility shall make or give any undue or unreasonable preference or advantage to any person, firm, corporation, or locality, or subject any person, firm, corporation, or locality to any undue or unreasonable prejudice or disadvantage."

[5] The demand charge penalizes peak requirements. It is defined as "the greatest thirty (30) minute integrated demand ascertained in kilowatts by instruments***or at the option of the Company***85% of the total connected load in lighting, motors, heating and all other energy consuming devices."

[6] D P & L's general service rate includes a demand charge, an energy charge, an energy charge-load factor, a minimum monthly charge, a fuel adjustment clause and a prompt payment discount. D P & L's residential rate is similar, except that it does not include a demand charge or an energy charge-load factor. The energy charge-load factor is irrelevant over the range of quantities consumed here.

We need not consider the standards included in these provisions since appellant has not demonstrated that the classification has resulted in higher electric bills or that appellant has otherwise been prejudiced. See *Ohio Edison Co.* v. *Pub. Util. Comm.* (1962), 173 Ohio St. 478, paragraph ten of the syllabus. The record does not disclose that appellant's bills under the general service rate were higher than they would have been had each constituent apartment unit been individually metered and thus billed under the residential rate. In fact, though the general service rate includes an extra demand charge, appellant appears to have been better off subject to bulk metering under the general service rate. This results because the marginal energy charge under both schedules declines as quantity consumed increases. Thus, if each constituent apartment unit were individually billed under the residential rate, higher marginal energy charges would have nullified the benefits of an exemption from the general service rate's demand charge.[7]

Additionally, since both rates provide for declining average prices per kilowatt hour, *i.e.,* marginal prices are *less* than average prices, it is not significant that appellant's bulk-metered buildings are paying a higher average price for electricity than are appellant's individually-metered units. Ap-

---

[7] In response to appellant's pre-complaint inquiry, D P & L offered the following example: If for a given two-month period, a bulk-metered building consumed 4,480 and 6,960 kilowatt hours of electricity and incurred demand charges of 11.2 and 30.4, respectively, its two-month bill would be $443.35 under the general service rate. If these same quantities of kilowatt hours were consumed ratably by the 16 constituent units and these units were billed individually under the residential rate, the two-month bill would be $504.96, *or $61.61 more even though the residential rate does not include a demand charge.* These quantities and demand charges are representative of the range at issue.

In its complaint, appellant counters that D P & L's billing of the bulk-metered buildings under the general service rate is prejudicial because the hypothetical bill of a single customer under the residential rate consuming all of a bulk-metered building's electricity would be lower. As reflected in the above example, D P & L considers the proper comparison under the residential rate to be the combined bills of 16 separate customers, *i.e.,* the number of apartment units, where each customer is billed for a ratable portion of the building's total consumption. Appellant's approach, which results in a much lower hypothetical bill (because of declining marginal energy charges), is without merit. Since no group of customers can so use the residential rate, there is no virtue in postulating such use for comparative purposes.

pellant's bulk-metered buildings use electricity only for lighting and incidental services, while its individually-metered units use electricity additionally for cooking, heating and air conditioning. Thus, the individually-metered units' higher levels of consumption assure lower average prices under the residential rate that, for reason of their lower level of consumption, are unavailable to the bulk-metered buildings under the general service rate, and would not be available to its constituent units, if they were billed under the residential rate.[8]

## II.

Appellant alternatively argues that it is entitled to select the residential rate because it meets that tariff's conditions.[9] The commission rejected this argument, construing the tariff to apply only to *individually*-metered residences.

The commission's construction is not unreasonable. By its terms, D P & L's residential rate is available "to all residences, single flats, single apartments, and churches for lighting, the operation of appliances, cooking, space heating, water heating, and incidental power." If "all residences" is regarded as a reference to individually-metered units, a congruity with "single flats" and "single apartments" is maintained. Additionally, if the construction of "all residences" were not so limited, the tariff's reference to *single* flats and *single* apartments would be redundant. This court is thus constrained to accept the commission's construction. See R. C. 4903.13;[10]

---

[8] Given the relatively low quantities of electricity consumed by the bulk-metered buildings, declining marginal energy charges and the magnitude of the demand charges, it is understandable that appellant has not exercised its option of qualifying for the residential rate by providing the wiring necessary for D P & L to install individual meters.

[9] Order No. 71-730-4, Public Utilities Commission of Ohio, General Service Rules and Regulations (effective October 24, 1973), in part, provides:

"Where the consumer can meet the requirements of more than one rate schedule, the consumer shall select the rate schedule upon which his***service shall be based.***"

There is no dispute that appellant qualifies for the general service rate since it "is available for lighting, heating, cooking, and power."

[10] R. C. 4903.13 states, in applicable part:

"A final order made by the public utilities commission shall be reversed, vacated, or modified by the supreme court on appeal, if, upon consideration of the record, such court is of the opinion that such order was unlawful or unreasonable."

*Akron* v. *Pub. Util. Comm.* (1978), 55 Ohio St. 2d 155, 156.

The order of the commission being neither unreasonable nor unlawful is affirmed.

*Order affirmed.*

CELEBREZZE, C. J., HERBERT, P. BROWN, SWEENEY and HOLMES JJ., concur.

LOCHER, J., concurs in the judgment.