TONGREN, OHIO CONSUMERS' COUNSEL, APPELLANT, *v.* PUBLIC UTILITIES COMMISSION OF OHIO ET AL., APPELLEES.

TONGREN, OHIO CONSUMERS' COUNSEL, APPELLANT, *v.* PUBLIC UTILITIES COMMISSION OF OHIO ET AL., APPELLEES.

[Cite as *Tongren v. Pub. Util. Comm.* (1999), 85 Ohio St.3d 87.]

(Nos. 97–740 and 97–1294—Submitted December 1, 1998—Decided March 24, 1999.)

*Robert S. Tongren,* Ohio Consumers' Counsel, *Frank P. Darr,* Legal Director, *Yolanda V. Vorys,* Assistant Legal Director, *Thomas J. O'Brien, Joseph P. Serio, Eric B. Stephens* and *David C. Bergman,* Assistant Consumers' Counsel, for appellant.

*Betty D. Montgomery,* Attorney General, *Duane W. Luckey* and *Thomas W. McNamee,* Assistant Attorneys General, for appellee Public Utilities Commission of Ohio.

*Jones, Day, Reavis & Pogue, Helen L. Liebman* and *Paul T. Ruxin,* for intervening appellee East Ohio Gas Company.

LUNDBERG STRATTON, J. The commission, as a creature of statute, has and can exercise only the authority conferred upon it by the General Assembly. *Columbus S. Power Co. v. Pub. Util. Comm.* (1993), 67 Ohio St.3d 535, 620 N.E.2d 835; *Pike Natural Gas Co. v. Pub. Util. Comm.* (1981), 68 Ohio St.2d 181, 22 O.O.3d 410, 429 N.E.2d 444; *Consumers' Counsel v. Pub. Util. Comm.* (1981), 67 Ohio

St.2d 153, 21 O.O.3d 96, 423 N.E.2d 820; and *Dayton Communications Corp. v. Pub. Util. Comm.* (1980), 64 Ohio St.2d 302, 18 O.O.3d 478, 414 N.E.2d 1051.

R.C. 4903.09 states:

"In all contested cases heard by the public utilities commission, a complete record of all the proceedings shall be made, including a transcript of all testimony and of all exhibits, and the commission shall file, with the records of such cases, findings of fact and written opinions setting forth the reasons prompting the decisions arrived at, based upon said findings of fact."

This court observed in *MCI Telecommunications Corp. v. Pub. Util. Comm.* (1987), 32 Ohio St.3d 306, 311, 513 N.E.2d 337, 343:

"The purpose of R.C. 4903.09 (formerly G.C. 614–46a), as stated by this court in *Commercial Motor Freight, Inc. v. Pub. Util. Comm.* (1951), 156 Ohio St. 360, 363–364, 46 O.O. 210, 211–212, 102 N.E.2d 842, 844–845, is:

" ' * * * to enable this court to review the action of the commission without reading the voluminous records in Public Utilities Commission cases. Where the commission states the facts found upon which it bases its decision, this court can usually readily determine, as it is required to do by Section 544, General Code [now R.C. 4903.13], whether the order of the commission is "unlawful or unreasonable." A review of the essential facts so found can also be made with the help of record references supplied by opposing counsel in their briefs. *The General Assembly never intended this court to perform the same functions and duties as the Public Utilities Commission but it did intend that this court should determine whether the facts found by the commission lawfully and reasonably justified the conclusions reached by the commission in its order and whether the evidence presented to the commission as found in the record supported the essential findings of fact so made by the commission.*' * * *" (Emphasis *sic*.)

Strict compliance with the terms of R.C. 4903.09 is not required. However, a commission order must provide "in sufficient detail, the facts in the record upon which the order is based, and the reasoning followed by the PUCO in reaching its conclusion." *Id.*, 32 Ohio St.3d at 312, 513 N.E.2d at 344; *Allnet Communications Serv., Inc. v. Pub. Util. Comm.* (1994), 70 Ohio St.3d 202, 209, 638 N.E.2d 516, 521. This court in a number of decisions has addressed the question of what constitutes adequate factual support for commission orders.[1] Suffice it to say, some factual support for commission determinations must exist in the record, an

---

1. See, *e.g., Allnet Communications Serv., Inc. v. Pub. Util. Comm.* (1987), 32 Ohio St.3d 115, 512 N.E.2d 350; *County Commrs.' Assn. of Ohio v. Pub. Util. Comm.* (1980), 63 Ohio St.2d 243, 17 O.O.3d 150, 407 N.E.2d 534; *Gen. Motors Corp. v. Pub. Util. Comm.* (1976), 47 Ohio St.2d 58, 1 O.O.3d 35, 351 N.E.2d 183; *Ideal Transp. Co. v. Pub. Util. Comm.* (1975), 42 Ohio St.2d 195, 71 O.O.2d 183, 326 N.E.2d 861; *MCI Telecommunications Corp. v. Pub. Util. Comm.* (1987), 32 Ohio St.3d 306, 513 N.E.2d 337.

obligation which the commission itself has recognized in its orders. See, *e.g., In re Petition of Studer & Numerous Other Subscribers of Neapolis Exchange of ALLTEL Ohio* (Sept. 6, 1990), Pub. Util. Comm. No. 88–481–TP–PEX. (Entry on Rehearing.)

This court noted recently that "[a] legion of cases establish that the commission abuses its discretion if it renders an opinion on an issue without record support." *Cleveland Elec. Illum. Co. v. Pub. Util. Comm.* (1996), 76 Ohio St.3d 163, 166, 666 N.E.2d 1372, 1375.

The record in the first case consists of the companies' joint application for approval of the merger; comments filed by OCC and another interested party; the companies' responses to those comments; and correspondence from the companies to the commission's staff, dated December 10, 1996, which was unsworn and signed by the companies' attorney. No hearing was held and no written testimony was filed on behalf of the companies or any other interested party. The commission's staff filed no comments, testimony, or report.

As to the merger approval, *per se,* in its December 19, 1996 Finding and Order, the commission makes numerous references to input from its staff upon which it relied. The commission refers to "findings" of its staff. Yet there is nothing in the record containing those findings, much less the factual bases for them. The commission also refers to a number of recommendations made by its staff and indicates they were made after the staff "reviewed" certain information. In one of its findings, the commission indicates that a staff recommendation resulted from discussions between the staff and East Ohio. Yet the record is devoid of what data, information, or facts the staff reviewed or considered in support of its recommendation. It is clear from the December 19, 1996 Finding and Order that the commission accepted its staff's recommendations and adopted as its own various of its staff's findings. However, there is nothing in the record below to evince the bases for the commission's acceptance of such recommendations and adoption of such findings.

As to GCR rates, the commission's December 19, 1996 Finding and Order indicated that the companies proposed to combine their separate GCR rates as a result of the proposed merger and that cost savings would be a consequence. The findings also indicate that the combined GCR rate would result in a $.70 per Mcf[2] reduction to West Ohio's customers and a $.02 per Mcf increase to East Ohio's customers caused by "the averaging affect [*sic* ] of the demand components contained within the two GCR rates."

With the exceptions of the GCR rate reduction finding as to West Ohio's customers and a self-evident finding as to cost savings from improved administra-

2. "Mcf" stands for thousand cubic feet (of gas).

tive efficiency resulting from combining the GCR rates into one, there is no support in the record for any of the conclusions or findings of the commission's staff set forth in the GCR findings. In its own findings, the commission states, "[s]taff finds that the proposal to combine the GCR rates of West Ohio and East Ohio, [sic] into a single GCR rate to be reasonable." However, it is impossible to determine what record evidence was considered by the staff in determining reasonableness. Since the commission adopted the staff's determination of reasonableness as its own, it is impossible to determine what record evidence was considered by the commission other than the conclusion of its staff and the assertion of factually unsupported conclusions by the companies in their joint application for merger approval.

The controlling law with respect to the first case, No. 96–991–GA–UNC, is defined by a 1975 Ohio Supreme Court decision, *Ideal Transp. Co. v. Pub. Util. Comm.* (1975), 42 Ohio St.2d 195, 71 O.O.2d 183, 326 N.E.2d 861, and a 1937 United States Supreme Court decision, *Ohio Bell Tel. Co. v. Pub. Util. Comm. of Ohio* (1937), 301 U.S. 292, 57 S.Ct. 724, 81 L.Ed. 1093.

The law of the case in *Ideal Transportation,* as set forth in its syllabus, is as follows:

"1. Where an opinion and order of the Public Utilities Commission fails to state specific findings of fact, supported by the record, and fails to state the reasons upon which the conclusions in the commission's opinion and order were based, such order fails to comply with the requirements of R.C. 4903.09, and is, therefore, unlawful.

"2. The Public Utilities Commission must base its decision in each case upon the record before it."

In *Ideal Transportation,* the Supreme Court of Ohio reversed an order of the commission that was based on thirteen findings of fact. The court determined that only two of the findings had any bearing on the commission's decision and that neither of those two findings had support in the record.

In *Ohio Bell,* the United States Supreme Court reversed and remanded a decision of the Supreme Court of Ohio that had affirmed a commission order directing the refund of rates collected by the telephone company. The order resulted from the commission's conclusion that the value of the telephone company's property, which was established by evidence of record, was to be adjusted by "price trends" that were gleaned from a separate commission investigation and analysis, of which the commission took judicial notice. The "price trends" were not reflected in evidence in the record of the case.

On appeal, Justice Cardozo admonished the commission for conducting an analysis of "price trends" based on "information secretly obtained and never yet

disclosed," and for "reporting its conclusion but not the underlying proofs." *Id.*, 301 U.S. at 300, 57 S.Ct. at 728, 81 L.Ed. at 1099. Justice Cardozo further cautioned that judicial review of administrative agency action "would be no longer a reality if * * * [the court were] to take the word of the Commission as to the outcome of a secret investigation and let it go at that." *Id.*, 301 U.S. at 303–304, 57 S.Ct. at 730, 81 L.Ed. at 1101. In support of that statement, the Cardozo court cited an earlier Cardozo opinion in *W. Ohio Gas Co. v. Pub. Util. Comm.* (No. 212) (1934), 294 U.S. 63, 55 S.Ct. 316, 79 L.Ed. 761, wherein the court stated in 294 U.S. at 68–69, 55 S.Ct. at 319, 79 L.Ed. at 768:

"Under the statutes of Ohio no provision is made for a review of the order of the Commission by a separate or independent suit. The sole method of review is by petition in error to the Ohio Supreme Court, which considers both the law and the facts. *Dayton P. & L. Co. v. [Public Utilities] Commission of Ohio,* 292 U.S. 290, 302 [54 S.Ct. 647, 653, 78 L.Ed. 1267, 1276]; *Hocking Valley Ry. Co. v. Public Utilities Commission* [1919], 100 Ohio St. 321, 326, 327, 126 N.E. 397 [399]. To make such review adequate the record must exhibit in some way the facts relied upon by the court to repeal unimpeached evidence submitted for the company. If that were not so, a complainant would be helpless, for the inference would always be possible that the court and the Commission had drawn upon undisclosed sources of information unavailable to others. A hearing is not judicial, at least in any adequate sense, unless the evidence can be known."

R.C. 4903.13 provides that "[a] final order made by the public utilities commission shall be reversed, vacated, or modified by the supreme court on appeal, if, upon consideration of the record, such court is of the opinion that such order was unlawful or unreasonable." In this case, it is without question that the Public Utilities Commission failed to meet the requirements of R.C. 4903.09 by not providing an adequate record. We recognize, however, that this court will not reverse an order of the Public Utilities Commission unless the party seeking reversal demonstrates the prejudicial effect of the order. *Holladay Corp. v. Pub. Util. Comm.* (1980), 61 Ohio St.2d 335, 15 O.O.3d 426, 402 N.E.2d 1175, at the syllabus, and we acknowledge that the appellant in this case has not demonstrated harm or prejudice with respect to the merger approval or to the consolidation of the GCR rate.

However, where, as in this case, the Public Utilities Commission fails to provide a record, the complaining party is effectively foreclosed from "demonstrating" the prejudicial effect of the order. Therefore, where the Public Utilities Commission fails to meet the requirements of R.C. 4903.09 by not disclosing the sources of its information to those who most require it, thereby preventing the complaining party from demonstrating prejudice, the matter must be remanded

for development of an appropriate record, to leave open the potential demonstration of prejudice by a party based upon that record in a subsequent appeal.

Accordingly, because the lack of a record stymies the complaining party's effort in demonstrating prejudice and prevents this court from conducting an effective review, we reverse the commission's orders and remand these consolidated cases for the development of an appropriate record as the basis for its decision, and for possible further appeal by the appellant if he can then demonstrate prejudice.

The second case, No. 96–219–GA–GCR, involved approval of East Ohio's GCR rate subsequent to the merger. In that case, OCC submitted a list of nine issues that he believed should be considered by the commission-appointed auditor in the next annual GCR rate-approval proceeding to come before the commission. The last two issues suggested for consideration by OCC were denominated (8) and (9).

In the second case, the commission concluded in its March 27, 1997 Opinion and Order:

"Finally, with respect to issues (8) and (9), we have previously considered these issues in Case No. 96–991–GA–UNC [the first case], and therefore, there is no need to reconsider these issues here again. Accordingly, issues (8) and (9) should not be included in the list of issues for the next m/p audit."

In the second case, the commission relied on its consideration of these issues in the first case. Since its consideration of those issues in the first case constituted reversible error for lack of support in the record, the commission's reliance thereon likewise constituted reversible error in the second case.

We, therefore, reverse and remand both cases to the commission for the development of a record and the correction of the errors consistent with this opinion.

*Orders reversed*
*and causes remanded.*

MOYER, C.J., PFEIFER and McMONAGLE, JJ., concur.

DOUGLAS, RESNICK and F.E. SWEENEY, JJ., dissent.

TIMOTHY E. McMONAGLE, J., of the Eighth Appellate District, sitting for COOK, J.

---

**DOUGLAS, J., dissenting.** I respectfully dissent. The cases now before us should be dismissed on the basis that appellant has made no claim or showing of prejudice. In *Ohio Contract Carriers Assn. v. Pub. Util. Comm.* (1942), 140 Ohio St. 160, 23 O.O. 369, 42 N.E.2d 758, at the syllabus, this court said, "Appeal lies only on behalf of a party aggrieved by the final order appealed from.

Appeals are not allowed for purpose of settling abstract questions, but only to correct errors injuriously affecting the appellant."

These cases present two issues. The first involves the commission's approval of the merger of West Ohio Gas Company into the East Ohio Gas Company. The second concerns the approval by the commission of the gas cost recovery ("GCR") rate brought about by the combining of the GCR rate of each company into one rate as a consequence of the merger.

On these two issues the majority finds that the commission did not make a proper record and, therefore, the commission's orders must be reversed. While the discussion by the majority is interesting, the threshold issue is whether the appellant can properly appeal without alleging any prejudice emanating from the commission's orders.

As to the merger question, the majority concedes that "we [the majority] acknowledge that the appellant in this case has not demonstrated harm or prejudice with respect to the merger approval * * *." In *Holladay Corp. v. Pub. Util. Comm.* (1980), 61 Ohio St.2d 335, 15 O.O.3d 426, 402 N.E.2d 1175, at the syllabus, this court said, "The Supreme Court *will not* reverse an order of the Public Utilities Commission unless the party seeking the reversal demonstrates that the order has a prejudicial effect, as applied to the party." (Emphasis added.) Accordingly, the majority is in error when it reverses the commission on this issue rather than granting the commission's motion to dismiss. This is especially true given the admission of the majority.

As to the GCR rate issue, again no prejudice is shown. The commission found that the combined GCR rate would result in a $.70 per Mcf reduction to West Ohio's customers and a $.02 per Mcf increase to East Ohio's customers. It is clear that West Ohio's customers would experience a rate *reduction.* The majority also concedes that there is "a self-evident finding as to cost savings from improved administrative efficiency resulting from combining the GCR rates into one * * *." In addition, the majority says, "we acknowledge that the appellant in this case has not demonstrated harm or prejudice with respect * * * to the consolidation of the GCR rate." Couple these facts with the facts that GCR rates change quarterly by company filing and such filings are audited annually and reviewed by the commission, and after a hearing adjusted to conform with the authorization, and that this is accomplished after the rates have been charged, it is clear that the reason no prejudice is alleged by appellant with regard to the combined GCR rate is because there could be none. See Ohio Adm.Code 4901:1–14–04 *et seq.*

Appellant may appear and contest, if it finds that to be in the best interest of the consumers he represents, in any or all future GCR rate hearings and show

prejudice, if any. However, appellant is not now prejudiced. Once again, no harm, no foul! Thus, appellees' motion to dismiss should be granted.

Two more matters in the majority opinion need to be discussed. First, the majority takes the commission to task for allegedly violating R.C. 4903.09. The commission did no such thing. R.C. 4903.09 requires that "a complete record of all the proceedings shall be made * * * and written opinions [by the commission] setting forth the reasons prompting the decisions arrived at * * *" must be issued. The commission *did* present a complete record of all of the proceedings that took place before the commission in the matters in question and *did* issue written opinions. This is not an *Ohio Bell* case, as cited by the majority, where Justice Cardozo was concerned by "information secretly collected and never yet disclosed." *Ohio Bell Tel. Co. v. Pub. Util. Comm. of Ohio* (1937), 301 U.S. 292, 300, 57 S.Ct. 724, 728, 81 L.Ed. 1093, 1099.

Second, the majority quotes the commission that " '[s]taff finds that the proposal to combine the GCR rates of West Ohio and East Ohio, [*sic* ] into a single GCR rate to be reasonable.' " The majority, from this statement, gleans that "it is impossible to determine what record evidence was considered by the staff in determining reasonableness." The majority again misses the point. What the commission was saying was that the *proposal to combine* was reasonable. Reasonableness of the rate was not the issue. That will be subject to continual review as set forth *supra.*

Accordingly, pursuant to *Ohio Contract Carriers Assn.* and *Holladay Corp.,* I believe that the joint motion of the PUCO and the East Ohio Gas Company to dismiss should be granted. Because the majority does not do so, I dissent.

RESNICK and F.E. SWEENEY, JJ., concur in the foregoing dissenting opinion.