[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *In re Application of FirstEnergy Advisors for Certification as a Competitive Retail Elec. Serv. Power Broker & Aggregator*, Slip Opinion No. 2021-Ohio-3630.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2021-OHIO-3630

IN RE APPLICATION OF SUVON, L.L.C., D.B.A. FIRSTENERGY ADVISORS, FOR CERTIFICATION AS A COMPETITIVE RETAIL ELECTRIC SERVICE POWER BROKER AND AGGREGATOR IN OHIO; OFFICE OF OHIO CONSUMERS' COUNSEL AND NORTHEAST OHIO PUBLIC ENERGY COUNCIL, APPELLANTS; PUBLIC UTILITIES COMMISSION, APPELLEE; SUVON, L.L.C., D.B.A. FIRSTENERGY ADVISORS, INTERVENING APPELLEE.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *In re Application of FirstEnergy Advisors for Certification as a Competitive Retail Elec. Serv. Power Broker & Aggregator*, Slip Opinion No. 2021-Ohio-3630.]

*Public utilities—R.C. 4928.08—Certification of competitive retail-electric-service providers—Before it can be certified by the Public Utilities Commission, a company must prove, among other things, that it has the managerial, financial, and technical fitness and capability to (1) provide competitive retail electric service and (2) comply with all applicable commission rules and orders—Ohio Adm.Code 4901:1-24-10(C)(1) and (C)(2)—Public*

*Utilities Commission must file a written opinion setting forth the reasons for certifying a company as fit and capable of providing retail electric service and complying with the commission's rules.*

(No. 2020-1009—Submitted June 29, 2021—Decided October 14, 2021.)

APPEAL from the Public Utilities Commission, No. 20-0103-EL-AGG.

———————————

**DEWINE, J.**

{¶ 1} Ohio consumers have the option of purchasing electricity in the competitive marketplace through a variety of competitive retail-electric-service providers. Before an entity of this type can market its services to customers, it must be certified by the Public Utilities Commission of Ohio ("PUCO"). R.C. 4928.08(B). In this case, we deal with an appeal from a PUCO decision granting certification to one such provider, Suvon, L.L.C., d.b.a. FirstEnergy Advisors ("FirstEnergy Advisors").

{¶ 2} To be certified by PUCO, a company must prove, among other things, that it has the managerial, financial, and technical fitness and capability to (1) provide competitive retail electric service and (2) comply with all applicable commission rules and orders. Ohio Adm.Code 4901:1-24-10(C)(1) and (C)(2). Two organizations intervened in PUCO proceedings and objected to the certification, raising issues about FirstEnergy Advisors' relationship with its parent company—FirstEnergy Corporation.

{¶ 3} Despite the objections, PUCO granted the certification request, issuing a barebones order that offered no explanation as to how FirstEnergy Advisors met the applicable legal requirements. In regard to FirstEnergy Advisors' relationship with its parent, PUCO concluded that these issues were best deferred to be dealt with in another ongoing PUCO proceeding.

{¶ 4} We now reverse PUCO's certification decision and remand the matter to the commission for further proceedings. By statute, PUCO must file "findings

of fact and written opinions setting forth the reasons prompting the decisions arrived at." R.C. 4903.09. The order in this case falls well short of this requirement. Further, in deferring consideration of issues relating to FirstEnergy Advisors' relationship with its parent corporation to another proceeding, PUCO violated its statutory duty to find, before approving a certification application, that a company is fit and capable of complying with all commission rules.

## I. Background

{¶ 5} Before we get to the facts, a brief overview of Ohio's energy landscape is helpful. Consumers have the option of purchasing electricity either from their local "distribution utility"—which also provides the infrastructure that delivers the electricity to the end-user—or through a host of competitive retail electric service providers ("CRES providers"). *See Ohio Consumers' Counsel v. Pub. Util. Comm.*, 110 Ohio St.3d 394, 2006-Ohio-4706, 853 N.E.2d 1153, ¶ 5. In either case, the electricity is delivered over wires owned and maintained by the local distribution utility, and that company can continue to charge for the delivery service. *Id.*

{¶ 6} A distribution utility may compete on the competitive wholesale market by establishing its own CRES provider. R.C. 4928.01(A)(4), (A)(9), and (A)(27); R.C. 4928.17(A)(1) and (2); R.C. 4928.08. In addition to selling electricity directly to customers, CRES providers may offer brokerage and aggregation services. Entities that provide power brokerage services arrange for the sale and supply of electricity to consumers, but they do not acquire title to the electricity sold. Electric aggregators bring consumers together in a buying group and negotiate with electricity suppliers for better prices and other benefits.[1] Public

---

1. For background on aggregation and brokerage in Ohio's Energy Choice program *see generally* Ohio Consumer's Counsel, *Energy Choice 101*, http://www.occ.ohio.gov/factsheet/energy-choice-101 (accessed Sept. 8, 2021) [https://perma.cc/9WXW-FRAK]; Public Utilities Commission of Ohio, *Energy Choice Ohio—What is aggregation*, https://energychoice.ohio.gov/Pages/What is Aggregation.aspx (accessed Sept. 8, 2021) [https://perma.cc/7GG3-5YZ7]; Public Utilities

Utility Commission of Ohio, *Competitive Retail Electric Service Provider Forms and Applications*, https://puco.ohio.gov/wps/portal/gov/puco/utilities/electricity/resources/competitive-retail-electric-service-certification (accessed Sept. 8, 2021) [https://perma.cc/3Q7M-L8UX]. To prevent a utility-affiliated CRES provider from having an unfair advantage in the marketplace, the utility-affiliated CRES provider must be fully separate from the distribution utility. R.C. 4928.17(A)(1). And before a company can begin providing such services, it must be certified by PUCO. R.C. 4928.08(B).

{¶ 7} FirstEnergy Corporation is the parent company of several distribution utilities, including the Ohio Edison Company, the Cleveland Electric Illuminating Company, and the Toledo Edison Company. It is also the parent of FirstEnergy Advisors, the CRES provider that is the subject of this appeal.

### A. FirstEnergy Advisors applies to PUCO for certification

{¶ 8} In January 2020, FirstEnergy Advisors applied for certification to provide aggregator and brokerage services as a CRES provider. *In re the Application of Suvon, L.L.C., d.b.a. FirstEnergy Advisors, as a Competitive Retail Electric Service Power Broker and Aggregator in Ohio*, Pub. Util. Comm. No. 20-0103-EL-AGG. Applications for certification are automatically approved 30 days after filing, unless PUCO or one of its attorney-examiners suspends the application. R.C. 4928.08(B) and Ohio Adm.Code 4901:1-24-10(A). The two appellants in this action, the Northeast Ohio Public Energy Council and the Ohio Consumers' Counsel (collectively, "the objectors") moved to intervene before PUCO, as did several other parties. At the same time, the objectors asked PUCO to suspend FirstEnergy Advisors' application and to conduct an evidentiary hearing. Their joint motion was premised on FirstEnergy Advisors' alleged failure to comply with

---

Commission of Ohio, *Energy Choice Ohio—Glossary of Terms*, https://energychoice.ohio.gov/Pages/Glossary of Terms.aspx (accessed on Sept. 8, 2021) [https://perma.cc/ZE2J-KK3V].

requirements that there be "corporate separation," *see* R.C. 4928.17, between itself and distribution utilities associated with FirstEnergy Corporation.

*B. A brief detour: the audit case*

{¶ 9} To allow the reader to understand the gravamen of the concerns raised by the objectors, we need to provide some background on a separate proceeding, which we will call the "audit case." To prevent unfair competition, Ohio law imposes "corporate-separation" requirements on CRES providers that are affiliated with an electric-distribution utility. *See* R.C. 4928.17; Ohio Adm.Code Chapter 4901:1-37. In 2017, PUCO opened a case to determine whether the three FirstEnergy electric-distribution utilities operating in Ohio are complying with these legal requirements. *See In re Review of the Ohio Edison Company, the Cleveland Electric Illuminating Company, and the Toledo Edison Company's Compliance with R.C. 4928.17 and the Ohio Adm.Code Chapter 4901:1-37*, Pub. Util. Comm. No. 17-0974-EL-UNC.

{¶ 10} An independent auditor selected by PUCO prepared a report in 2018 that focused primarily on the FirstEnergy utilities' relationship with FirstEnergy Solutions Corporation, then a CRES provider affiliated with FirstEnergy. The audit report recommended that the entities modify several practices that provided FirstEnergy Solutions with a competitive advantage. The report found that the sharing of certain employees between FirstEnergy Solutions, FirstEnergy Corporation, and the FirstEnergy distribution utilities was inappropriate because it gave FirstEnergy Solutions access to information and resources not available to other market participants. The audit report also recommended that PUCO require FirstEnergy Solutions to stop using the "FirstEnergy" name, to eliminate affiliate bias and prevent customer confusion.

{¶ 11} Before a final report was issued, FirstEnergy Solutions filed for Chapter 11 bankruptcy protection. The company later emerged from bankruptcy, adopted a new name, and is no longer affiliated with FirstEnergy Corporation. Pub.

Util. Comm. No. 17-0974-EL-UNC, Entry, ¶ 6-7 (Dec. 2, 2020). Despite this, the audit case remains open. And as we will explain shortly, PUCO is using the case as a vehicle to examine the corporate-separation issues relating to FirstEnergy Advisors.

### C. PUCO certifies FirstEnergy Advisors

{¶ 12} We now return to the FirstEnergy Advisors' certification proceeding. Relying on information from the audit case, the objectors alleged two ways in which FirstEnergy Advisors lacked the "managerial, technical, and financial capability" to provide competitive retail electrical services and comply with all applicable PUCO rules and regulations. First, they asserted that by sharing corporate officers and directors with FirstEnergy Corporation and the FirstEnergy distribution utilities, FirstEnergy Advisors violated the requirement of R.C. 4928.17(A)(1) that electrical services be provided through "a fully separated affiliate of the utility." They noted, for example, that Charles Jones—FirstEnergy Corporation's CEO—also served as a manager of FirstEnergy Advisors and as a director of FirstEnergy's regulated utilities. Likewise, one other senior officer of FirstEnergy Corporation held a management position in both FirstEnergy Advisors and the regulated utilities and another held a management position with FirstEnergy Advisors. Second, they contended that FirstEnergy Advisors, by using the "FirstEnergy" name, was violating Ohio Adm.Code 4901:1-37-04(D)(7), which prohibits distribution utilities from specifying that a CRES provider is an affiliate. In support of their motion, the objectors relied on findings made by PUCO in the audit case.

{¶ 13} The day after the objectors' filings, an attorney-examiner suspended the certification process to allow the commission additional time to investigate FirstEnergy Advisors' application. Pub. Util. Comm. No. 20-0103-EL-AGG, Entry, ¶ 5-9 (Feb. 11, 2020).

{¶ 14} Several weeks later, PUCO staff issued a two-paragraph report recommending approval of the application. The report states:

> [FirstEnergy] Advisors has answered all applicable sections and provided all required exhibits as listed in the application form. In addition, [FirstEnergy] Advisors has stated that it intends to comply with all commission rules.
>
> * * * Staff has thoroughly reviewed and evaluated this application, accompanying exhibits, and amendments. Based on this review, Staff believes the application filed by * * * FirstEnergy Advisors * * *, as amended * * *, is in compliance with [the] Ohio Administrative Code and therefore, Staff recommends that this application be approved.

{¶ 15} While PUCO was considering whether to adopt the staff recommendation, the objectors served discovery requests on FirstEnergy Advisors. FirstEnergy Advisors refused to provide the requested discovery, and the objectors responded by filing motions to compel. FirstEnergy Advisors, in turn, sought a protective order to prevent discovery from going forward.

{¶ 16} A little over two weeks after receiving the staff report and recommendation, PUCO entered an order adopting the staff report and approving FirstEnergy Advisors' application. In regard to the issues raised by the objectors, PUCO concluded that issues concerning use of the FirstEnergy name and "compliance with corporate separation requirements by FirstEnergy Corp. affiliates are best raised in other proceedings, specifically" the audit case. Pub. Util. Comm. No. 20-0103-EL-AGG, Finding and Order, ¶ 20 (April 22, 2020). Having pushed the corporate-separation issues to the side, PUCO next determined that "the only relevant issues" were whether FirstEnergy Advisors had the managerial, financial,

and technical capabilities to provide electricity aggregator and brokerage services in Ohio. *Id.* at ¶ 21. It noted that its staff had "thoroughly reviewed" FirstEnergy Advisors' application and that no "other parties have raised material issues regarding [FirstEnergy Advisors'] managerial, technical and financial capability." *Id.*

{¶ 17} In granting the application, PUCO found that no hearing was necessary. *Id.* at ¶ 22. It also denied as moot the objectors' motions to compel discovery as well as FirstEnergy Advisors' request for a protective order. *Id.* at ¶ 25.

{¶ 18} The objectors requested rehearing, which PUCO denied. Pub. Util. Comm. No. 20-0103-EL-AGG, Entry on Rehearing, ¶ 1 (June 17, 2020). In denying rehearing, PUCO noted that the auditor's finding in the audit case on the use of the FirstEnergy trade name "represent[ed] a significant departure from well-established Commission precedents" and that it would be more efficient to deal with that issue, as well as the shared-employee issue, in the audit case. *Id.* at ¶ 16. As for the objectors' claim that it had failed to make factual findings and conclusions of law as required by R.C. 4903.09, PUCO simply stated: "[W]e find that our reasoning, and the factual basis supporting approval of [FirstEnergy Advisors'] application, are easily discernable from the [original] Finding and Order." *Id.* at ¶ 28.

{¶ 19} The objectors appealed to this court, each raising several propositions of law, some of which overlap. Generally, they assert that PUCO erred by (1) failing to provide a sufficient rationale for its decision, (2) approving the application without determining whether FirstEnergy Advisors met corporate-separation requirements, (3) denying the objectors an opportunity to conduct discovery, (4) failing to hold a hearing, and (5) improperly shifting the burden of proof to the objectors. The commission has defended its order, and we granted

FirstEnergy Advisors' request to intervene in this appeal. 160 Ohio St.3d 1402, 2020-Ohio-4481, 153 N.E.3d 97.

## II. Analysis

*A. The commission's order violates R.C. 4903.09 because it fails to explain the reasoning and factual grounds for granting FirstEnergy Advisors' application*

{¶ 20} We take up first the assertion that PUCO violated R.C. 4903.09, which requires it to explain the reasoning and factual grounds for its decision. That provision provides:

> In all contested cases heard by the public utilities commission, a complete record of all of the proceedings shall be made, including a transcript of all testimony and of all exhibits, and *the commission shall file, with the records of such cases, findings of fact and written opinions setting forth the reasons prompting the decisions arrived at, based upon said findings of fact.*

(Emphasis added.)

{¶ 21} The purposes behind R.C. 4903.09's requirements are straightforward. For a reviewing court to do its job, it needs to have enough information to know how the commission reached its result. *Allnet Communications Servs., Inc. v. Pub. Util. Comm.*, 70 Ohio St.3d 202, 209, 638 N.E.2d 516 (1994). The "statute requires the commission to set forth the reasons for its decisions and prohibits summary rulings and conclusions that do not develop the supporting rationale or record." *In re Application of Ohio Power Co.*, 155 Ohio St.3d 326, 2018-Ohio-4698, 121 N.E.3d 320, ¶ 24.

{¶ 22} Of course, PUCO can adopt reports prepared by its staff and incorporate them into its order, but these reports must satisfy the requirements of the statute; that is, they must contain sufficient factual findings and conclusions of

law. *MCI Telecommunications Corp. v. Pub. Util. Comm.*, 32 Ohio St.3d 306, 311, 513 N.E.2d 337 (1987). At bottom, PUCO's order "must show, in sufficient detail, the facts in the record upon which the order is based, and the reasoning followed by the [commission] in reaching its conclusions." *Id*. at 312. The order here does neither.

{¶ 23} To approve FirstEnergy Advisors' application, PUCO was required to find that the company was "managerially, financially, and technically fit and capable of" (1) "performing the service it intends to provide" and (2) "complying with all applicable commission rules and orders." Ohio Adm.Code 4901:1-24-10(C)(1) and (C)(2).

{¶ 24} Neither PUCO's order nor the staff report it adopts explains how FirstEnergy Advisors is managerially, financially, and technically fit to provide electricity aggregator and brokerage services. The staff report simply recites that FirstEnergy Advisors provided the requested materials, that PUCO staff "thoroughly reviewed" these materials, and that the staff believes that the application complies with the Ohio Administrative Code.

{¶ 25} PUCO did not make any independent findings about FirstEnergy Advisors' managerial fitness and competence to provide competitive retail electric services. Rather than engage in any analysis of whether FirstEnergy Advisors met the statutory requirements, PUCO simply noted that none of the intervening parties countered the staff report's findings or "raised material issues" about FirstEnergy Advisors' capability to provide the applied-for services. Pub. Util. Comm. No. 20-0103-EL-AGG, Finding and Order at ¶ 21 (April 22, 2020). It did not explain how FirstEnergy Advisors established that its managers and employees have the skill, experience, and training needed to provide competitive retail electric services to Ohio consumers. *See* Ohio Adm.Code 4901:1-24-10(C)(1). Nor did it cite any facts in the record to support its conclusions.

{¶ 26} Similar deficiencies arise when we consider the requirement that PUCO find that FirstEnergy Advisors is fit and capable of complying with all applicable commission rules and orders. The staff report simply recites that FirstEnergy Advisors "has stated that it intends to comply with all commission rules." That report, however, does not explain how FirstEnergy Advisors' application establishes that the company's managers and employees possess the skill, experience, and training necessary to provide broker and aggregator services. Nor is it self-evident how the staff's recitation of FirstEnergy Advisors' statement that it *intends* to comply with all commission rules satisfies PUCO's obligation to find that FirstEnergy Advisors *is* fit and capable of complying with commission rules. Rather than relying on the company's stated intent, PUCO should have identified plans, procedures, and protocols FirstEnergy Advisors has in place that show the company is fit and capable of complying with all applicable commission rules and orders.

{¶ 27} In sum, PUCO violated R.C. 4903.09 in two ways. First, it failed to provide a reasoned explanation of the basis of its decision that FirstEnergy Advisors met the requirements of Ohio Adm.Code 4901:1-24-10(C)(1) and (2). *See In re Application of Duke Energy Ohio, Inc.*, 148 Ohio St.3d 510, 2016-Ohio-7535, 71 N.E.3d 997, ¶ 19-22; *MCI Telecommunications Corp.*, 32 Ohio St.3d at 311, 513 N.E.2d 337. And it failed to identify the facts in the record on which it based its decision. *See Ohio Consumers' Counsel v. Pub. Util. Comm.*, 111 Ohio St.3d 300, 2006-Ohio-5789, 856 N.E.2d 213, ¶ 22-36; *Tongren v. Pub. Util. Comm.*, 85 Ohio St.3d 87, 89-91, 706 N.E.2d 1255 (1999).

{¶ 28} FirstEnergy Advisors argues that even if PUCO did not comply with its obligation to provide a sufficient rationale for its decision, we should not reverse PUCO's order because the objectors have failed to show that they have suffered any actual prejudice by PUCO's certification of FirstEnergy Advisors. Essentially, FirstEnergy Advisors argues that the most the objectors can complain about is the

possibility that FirstEnergy Advisors will engage in anticompetitive practices after certification and that such a possibility does not constitute prejudice sufficient to allow for reversal of the PUCO certification order.

{¶ 29} Under FirstEnergy's prejudice theory, a PUCO certification order would essentially be unreviewable. Harm from an improper certification will always be speculative until the newly certified CRES provider enters the marketplace and engages in harmful behavior. We are reluctant to read the prejudice requirement so broadly that it would swallow up the right to challenge a CRES certification altogether.

{¶ 30} We have also recognized in the context of R.C. 4903.09 challenges that PUCO's failure to provide any rationale for its order may effectively preclude a party from showing prejudice. *Tongren*, 85 Ohio St.3d at 92-93, 706 N.E.2d 1255. In *Tongren*, we explained that when "[PUCO] fails to provide a record, the complaining party is effectively foreclosed from 'demonstrating' the prejudicial effect of the order." *Id.* at 92. Thus,

> where [PUCO] fails to meet the requirements of R.C. 4903.09 by not disclosing the sources of its information to those who most require it, thereby preventing the complaining party from demonstrating prejudice, the matter must be remanded for development of an appropriate record, to leave open the potential demonstration of prejudice by a party based upon that record in a subsequent appeal.

*Id.* at 92-93.

{¶ 31} To be sure, *Tongren* involved circumstances somewhat different from those present here; in that case, PUCO's order referred to various findings and recommendations of staff that were not made part of the record. But the same

principle applies: without knowing why the commission decided what it did, an objector faces an almost insurmountable task in showing prejudice. As a result, we conclude that the matter should be remanded for PUCO to make factual and legal findings consistent with its obligations under R.C. 4903.09.

{¶ 32} This is not to say that the application necessarily lacks sufficient information. PUCO may be able to explain on remand how FirstEnergy Advisors met the requirements of Ohio Adm.Code 4901:1-24-10(C)(1) and (2). But PUCO explained none of these matters, and the stated basis for its decision (the staff report) lacks sufficient reasoning.

*B. PUCO erred by deferring a determination whether FirstEnergy Advisors is fit and capable of complying with corporate-separation requirements*

{¶ 33} We also conclude that PUCO violated its duty to find that FirstEnergy Advisors was "fit and capable of complying with all applicable commission rules" by deferring all consideration of the corporate-separation issues to the audit case.

{¶ 34} An electric utility and a CRES affiliate that provide services within the utility's service area must comply with a detailed set of legal requirements. Ohio Adm.Code 4901:1-37-04. A utility is not barred from sharing employees with an affiliate, but when it does so, it must comply with a "code of conduct" designed to prevent the utility-affiliated company from gaining an unfair competitive advantage over other competitors. Ohio Adm.Code 4901:1-37-04(A)(4) and (D). The code of conduct prohibits the improper flow of information between shared service employees of the electric utility and competitive affiliates. *See* Ohio Adm.Code 4901:1-37-04(D)(1), (3), and (4).

{¶ 35} Here, PUCO made no finding at all about FirstEnergy Advisors' capability or fitness to comply with these rules. There was no examination of the shared employees nor of procedures and policies FirstEnergy Advisors had in place to prevent information from passing improperly between shared employees.

Instead of determining whether FirstEnergy Advisors had shown that it could comply with the code of conduct, PUCO deferred all issues regarding corporate-separation requirements to the audit case. Pub. Util. Comm. No. 20-0103-EL-AGG, Entry on Rehearing at ¶ 11, 33 (June 17, 2020).

{¶ 36} This PUCO cannot do. Under R.C. 4928.08(B), a company cannot provide competitive retail electric services to consumers "without first being certified." And to be certified, PUCO must find that an applicant is "fit and capable of complying" with the commission's rules. Ohio Adm.Code 4901:1-24-10(C)(2). These rules provide no flexibility for PUCO to defer a finding about a CRES provider's fitness and capability to comply with the rules until after PUCO has certified the applicant.

{¶ 37} In arguing that the requisite finding was made, FirstEnergy Advisors and PUCO point to PUCO's statement that its staff had thoroughly reviewed and evaluated the company's ability to comply with PUCO's rules or orders under R.C. Chapter 4928. But this general pronouncement must be read in conjunction with PUCO's explicit statements that the corporate-separation issues are "best raised in other proceedings," Pub. Util. Comm. No. 20-0103-EL-AGG, Finding and Order at ¶ 20-21 (April 22, 2020), and that as a result, "the only relevant issues in this certification proceeding are whether [FirstEnergy] Advisors has the managerial, technical and financial capability to be a CRES broker/aggregator in this state," *id.* at ¶ 21. When PUCO's orders—both its initial order and its order on reconsideration—are read as a whole, it is clear that PUCO made no determination about FirstEnergy Advisors' capability and fitness to comply with the corporate-separation requirements but deferred all consideration of these matters to the audit case.

{¶ 38} To be clear, it was not error for the commission to defer questions about FirstEnergy Advisors' actual compliance with the code of conduct to another proceeding once the company had been certified to provide broker and aggregator

services. But PUCO was required to decide whether FirstEnergy Advisors had demonstrated that it could comply with corporate-separation requirements before certifying the company to provide service in Ohio.

{¶ 39} Thus, on remand, *before* granting certification, PUCO must determine whether FirstEnergy Advisors had demonstrated that it is fit and capable of complying with all PUCO rules, including corporate-separation requirements. It cannot simply defer resolution of these matters to another proceeding.

C. *The other issues presented for review may be resolved in short order*

{¶ 40} Given our decision to remand this matter to PUCO, we can resolve the remaining issues in short order and provide guidance to the commission on remand.

{¶ 41} First, on remand, PUCO should decide on the merits the discovery motions filed by the objectors. In its order, the commission denied the motions to compel discovery as moot because it had approved FirstEnergy Advisors' application on the merits. Pub. Util. Comm. No. 20-0103-EL-AGG, Finding and Order at ¶ 25 (April 22, 2020). And on rehearing, PUCO provided an additional rationale, asserting that the objectors had not "expeditiously prosecute[d]" their discovery motions under the expedited review process found in R.C. 4928.08(B) (giving the commission 90 days to approve or deny an application for certification after an attorney-examiner suspends consideration). Pub. Util. Comm. No. 20-0103-EL-AGG, Entry on Rehearing at ¶ 23 (June 17, 2020). Because our decision reverses PUCO's order granting FirstEnergy Advisors' application on the merits, on remand the discovery issue will not be moot.

{¶ 42} We have recognized PUCO's broad discretion to regulate its proceedings and manage its docket. *See, e.g., Weiss v. Pub. Util. Comm.*, 90 Ohio St.3d 15, 19, 734 N.E.2d 775 (2000). But intervening parties in proceedings before PUCO also have a statutory right to discovery under R.C. 4903.082. *See also* Ohio Adm.Code 4901-1-16(B) and (H). And we have construed these provisions as

allowing broad discovery of nonprivileged matters. *See Ohio Consumers' Counsel v. Pub. Util. Comm.*, 111 Ohio St.3d 300, 2006-Ohio-5789, 856 N.E.2d 213, ¶ 82-83. To be sure, PUCO was under a tight deadline given the expedited review of certification applications. But both objectors requested discovery from FirstEnergy Advisors and, when such discovery was not forthcoming, sought PUCO's assistance within the statutory timeframe. PUCO should have decided whether discovery was necessary; not simply decided that discovery was unnecessary because it had already made a decision. On remand, PUCO should rule on the merits of the discovery motions before issuing a decision on the certification application. In doing so it will need to balance the statutory right to discovery and the constraints imposed by the statutory time frame for ruling on the certification application.

{¶ 43} Second, PUCO will need to rule on the objectors' request for an evidentiary hearing. The objectors have asserted that PUCO abused its discretion by approving the certification application without holding an evidentiary hearing on FirstEnergy Advisors' application. Our determination to reverse and remand so that PUCO can explain its decision renders this proposition of law moot. On remand, PUCO may "[a]t its discretion, set the matter for hearing." *See* Ohio Adm.Code 4901:1-24-10(A)(2)(c). In exercising this discretion, PUCO will need to be mindful of the statutory time frame for decision-making and consider the extent to which a hearing would be beneficial in view of the materials submitted in support of the application and the objections that have been raised.

{¶ 44} Third, one of the objectors has argued that PUCO improperly shifted the burden of proof. The basis for this argument comes from PUCO's reliance in its order denying reconsideration on the fact that "no party in this case had materially disputed Staff's determination that [FirstEnergy Advisors] had the managerial, technical and financial capability to serve as a CRES power broker and aggregator." Pub. Util. Comm. No. 20-0103-EL-AGG, Entry on Rehearing at ¶ 28

(June 17, 2020). Our decision to set aside PUCO's order and remand the case renders this proposition of law moot. In evaluating the application on remand, we trust that PUCO will be mindful that it remains the applicant's burden to demonstrate that it meets the statutory requirements for certification regardless of whether any other party has disputed the applicant's qualifications.

### III. Conclusion

{¶ 45} For these reasons, we reverse PUCO's orders and remand the case to PUCO for further proceedings consistent with this opinion.

Orders reversed

and cause remanded.

O'CONNOR, C.J., and KENNEDY, FISCHER, DONNELLY, STEWART, and BRUNNER, JJ., concur.

_____

Bruce Weston, Ohio Consumers' Counsel, and Angela D. O'Brien, Assistant Consumers' Counsel; and Carpenter, Lipps & Leland, L.L.P., and Kimberly W. Bojko, for appellant Office of the Ohio Consumers' Counsel.

Bricker & Eckler, L.L.P., Glenn S. Krassen, and Dane Stinson, for appellant Northeast Ohio Public Energy Council.

Dave Yost, Attorney General, and John H. Jones, Thomas G. Lindgren, and Kyle L. Kern, Assistant Attorneys General, for appellee.

Benesch, Friedlander, Coplan & Aronoff, L.L.P., N. Trevor Alexander, and Kari D. Hehmeyer, for intervening appellee Suvon L.L.C., d.b.a. FirstEnergy Advisors.

_____